ARTHUR C. RAWSON v. CADET TAYLOR ET AL.

FILED JUNE 18, 1903.   No. 13,118.

1. **Right of Creditor of Bank to Maintain Action on Bond.** Where,
pending an application for the appointment of a receiver for a
bank, under the provisions of chapter 8, Compiled Statutes, a bond
is given to procure the return of the assets of such bank under the
provisions of section 35 of said chapter, and such proceedings are
dismissed and the assets returned, any creditor who is a ben-
eficiary of such bond may maintain an action at law thereon,
after the condition is broken to his damage.

2. **Erroneous Instruction.** Record and evidence examined, and *held*
that, in this case, the plaintiff can maintain such an action, and
that the charge, "It appearing that there are other unpaid cred-
itors of the Globe Savings Bank not parties hereto and not repre-
sented herein, and the law being that this plaintiff can not main-
tain this suit if that be true, you are therefore instructed to find
for the defendants," given by the court to the jury, is erroneous,
and the plaintiff is entitled to a new trial.

ERROR to the district court for Douglas county: WIL-
LARD W. SLABAUGH, DISTRICT JUDGE. *Reversed.*

*Arthur C. Wakeley,* for plaintiff in error.

*A. S. Churchill, contra.*

GLANVILLE, C.

This is an action upon a bond given under the provis-
ions of section 35, chapter 8 of the Compiled Statutes (An-
notated Statutes, 3735), running nominally to the state
of Nebraska, given to secure the return of the assets of the

Globe Savings Bank, to its officers, the bond being as follows:

"Know all men by these presents: That we, the Globe Savings Bank of Omaha, Nebraska, as principal, and H. O. Devries, Cadet Taylor, D. T. Mount and Globe Loan & Trust Company, as sureties, are jointly and severally held and firmly bound unto the state of Nebraska for the use and benefit of all the depositors and creditors of the Globe Savings Bank of Omaha in the sum of fifty thousand dollars ($50,000) in good and lawful money of the United States, for the payment of which we do by these presents bind ourselves, our heirs, executors, administrators and assigns. The conditions of the above obligation are such: That, whereas, the said Globe Savings Bank of Omaha having become insolvent, and the officers and shareholders of said bank being desirous to make full payment and settlement of all the liabilities of said bank, and for that purpose desire that H. O. Devries as president, and Cadet Taylor as vice-president of said Globe Savings Bank, shall take and retain possession of all the assets of said bank:

"Now, if the said Globe Savings Bank, or its officers as aforesaid shall make, or cause to be made, full settlement of all the liabilities of said bank with the several and numerous creditors and depositors thereof, within three (3) years from the date of this obligation, with interest, then in that case, this obligation to be null and void, otherwise to be and remain in full force and effect.

"In witness whereof, we have hereunto set our hands, this ninth day of June, 1896.

"(SEAL.)   GLOBE SAVINGS BANK, *Principal*,
     "By H. O. DEVRIES, *President*.
     "H. O. DEVRIES,
     "CADET TAYLOR,
     "D. T. MOUNT,
"(SEAL.)   GLOBE LOAN AND TRUST CO.,
     "By H. O. DEVRIES, *Pres.*,
     "W. B. TAYLOR, *Secretary,*
        *"Sureties."*

After three years from the date of this bond, the plaintiff, who was one of the unpaid creditors of the bank, and also the assignee of the claims of a large number of other such creditors, both as to claims and damages, brought this suit upon the bond, alleging breach of condition and damages. All the obligors, except H. O. Devries, then deceased, were made defendants in the court below, and are defendants in error here.

Several defenses were pleaded to plaintiff's action, which briefly stated, are as follows: First: That plaintiff is not the real party in interest except as to his original, individual, claim. Second (stated in full as in the answer): "The defendants further say that the plaintiff can not sue and maintain an action, in his own name and for his sole use, upon said bond set out and made a part of his amended petition, there being numerous other creditors of said Globe Savings Bank unpaid. That an action could only be maintained thereon in the name of the state of Nebraska, for the use and benefit of all the creditors of the said Globe Savings Bank." Third: "Defendants deny that said bond ever became effective or operative in any way at any time," etc. The claim being that the assets of the bank were not turned over to the proper parties as required by law, and the terms of the bond. Fourth: A plea of the statute of limitations. (This, however, seems to have been abandoned.)

Trial was had to a jury, and the court instructed a verdict for the defendants by the following charge:

"It appearing that there are other unpaid creditors of the Globe Savings Bank, not parties hereto, and not represented herein, and the law being that this plaintiff can not maintain this suit if that be true, you are therefore instructed to find for the defendants."

This charge was duly excepted to. A verdict was returned in accordance with the above direction; a proper motion for a new trial was filed, overruled, and exception taken. Judgment that plaintiff take naught upon his cause of action was entered, and the case is brought to this

court on a petition in error, properly raising the question of the correctness of the instruction above quoted, the verdict rendered and judgment based thereon.

The main question to be determined, is the correctness of the charge or direction to the jury, based upon the reasons therein assigned.  Other reasons are urged why an instruction for the defendant was proper, one being that the bond in suit shows upon its face, that the consideration thereof required the return of the assets of the bank to H. O. Devries, as president, and Cadet Taylor, as vice-president of the bank, and that the evidence shows that the assets were turned over to Cadet Taylor, instead of to H. O. Devries and Cadet Taylor, and that, therefore, no liability ever attached upon the bond.

The question is also raised as to the right of the plaintiff to maintain his action upon the assigned claims, but if upon the entire case the plaintiff could sustain his action for his own claim, the direction to the jury is wrong, and the case must be reversed, whether his assignments are good or not.  Moreover, we think the defendants' answer admits the assignments, and as they place the legal title to the claims, and the legal right to receive the money thereon, in the plaintiff, we are of the opinion that he can maintain his action for all claims, if for any.  We say the answer admits the assignments because the language used therein is:

"The defendants deny that any of said claims mentioned in said amended petition have been assigned to the plaintiff and (allege) that said pretended assignments, if any were made, are without consideration, and are null and void."

This is an admission of the assignments.  See *Dinsmore & Co. v. Stimbert,* 12 Neb. 433.

Coming now to the contention that no proper delivery of the assets of the bank was made, so as to cause the bond to become operative and binding, we think the evidence tends to show, which is all that would be necessary to render the instruction erroneous, unless right for the reason therein given by the court, that the assets of the bank

were in fact turned over or delivered to Cadet Taylor in the presence of H. O. Devries, who made no objection to the delivery.

We think it will be recognized as the law without citation or argument, that where either a legal or a contract duty requires the delivery of property to two parties for their joint benefit or joint control, a delivery to one in the presence of the other, who makes no objection, is a good delivery to both; in fact, a manual delivery to two persons simultaneously is practically impossible, and if the contention of defendants in error is that the assets should have been delivered to Devries and Taylor, the evidence tends to show such delivery.

That in so receiving the property they acted as officers of the bank, is clear from the letter to the state banking board, contained in the bill of exceptions, signed by them and the defendant Mount, a director, as for the bank, clearly acknowledging for the bank, possession of the assets and control of negotiations for settlements. There is much to indicate that defendants think the officers signing this bond as sureties are the officers "furnishing the bond" under the statute, but in this case it is the owner, the bank corporation, that furnished the bond, the bank is principal, the others are the sureties upon its bond.

It may be remarked here, that it is difficult to determine, from the pleadings and argument of the defendants in error, who they claim should have received the assets, the redelivery of which was secured by the giving of this bond. There is much vagueness in their pleadings on this branch of the case, with denials of facts not pleaded.

We think, further, that the evidence strongly tends to show that if any mistake was made in regard to the redelivery of these assets, certain of the defendants, if not all, are estopped, or have waived their right, to contend that the bond is not binding upon them because of such mistake.

In thus disposing of this branch of the case, we do not wish to be understood as holding or admitting, that the

obligors upon this bond can read the recitals of the pre-
amble to the condition, into the condition, as a proviso,
and thus avoid a liability, the consideration for which,
was the dismissal of the proceedings for the appointment
of a receiver, and the release of the assets of the bank from
the sequestration under the law.

Without giving more space to this branch of the case,
we will say that in the condition of the pleadings and the
evidence, we are satisfied that the instruction complained
of, and the resulting verdict and judgment, can be sus-
tained upon no theory other than that adopted by the trial
court, and here strenuously urged by defendants in error,
namely, that an action upon this bond can not be sustained
by a single creditor of the bank for his benefit alone, but
that the only action that can be sustained thereon, is one
in the name of some proper party for the benefit of all the
creditors of the bank whose claims have not been settled
in accordance with the conditions of the bond, and that
any fund created by the collection of money from the obli-
gors in this bond, would constitute a trust fund which
should be ratably distributed among all the creditors.

The case has been advanced to an immediate hearing be-
cause of the general, and perhaps the public interest in the
decision of the question. What is desired is a right rule,
and a certain rule of procedure in such cases, but in an-
nouncing what we hold to be the rule, we will, in view of
the importance of the question, give its consideration some
time and space, with a view to satisfy the profession that
the rule is right.

The question is one that is not easily settled by prece-
dent, or by authorities cited from other states where the
legislative and judicial policies may be different from
those of our own.

The provisions under which the bond in suit was given
are contained in section 35, chapter 8 of our statutes,
which prescribes the duties of receivers of banks appointed
under other provisions of the act, and then provides:

"That whenever the officers, stockholders or owners of

any insolvent bank shall give a good and sufficient bond running to the state of Nebraska, * * * conditioned upon the full settlement of all the liabilities of said bank by such officers, stockholders or owners, within a stated time, and said bond shall have been approved by the state banking board, then the state banking board shall turn over all the assets of such bank to the officers, stockholders, or owners of such bank furnishing the said bond."

It is contended by the defendants in error that the action of the banking board in taking charge of the assets of the bank, the giving of the bond sued upon in this section, and the resulting proceedings, worked a dissolution of the bank corporation, and that, therefore, under the provisions of section 62, chapter 16 of our statutes, the assets of the bank became, *ipso facto*, a trust fund for the benefit of all the creditors.

Without attempting to answer the extended argument in support of this contention, we will hold that the corporation was not thereby dissolved, and the section referred to has no application to the question under discussion. See 2 Morawetz, Private Corporations (2d ed.), sec. 869; *State v. German Savings Bank*, 50 Neb. 734.

It has been strenuously urged by plaintiff in error that this case turns upon the question: "Is money due upon this bond, an asset of the bank?" This can not be the test question, for the statutory double liability of stockholders of banking corporations can never be considered a true asset of the bank; the corporation has no right to collect it; if it be collected by the bank and used to keep it a going concern, this does not protect the stockholders when called upon to pay as required by law for the benefit of creditors. It is a fund or security, provided by law for the benefit of creditors, and is attached to the stockholders' contract, as an incident, and yet it has been held by this court that the money due on such liability can only be collected in a suit for the benefit of all creditors.

It has been provided by statute, that upon certain named contingencies, the assets of a bank shall be se-

questered in a manner provided, and in effect that the proceeds thereof shall be ratably distributed. In the case before us, the bond in question is a security, outside of the assets of the bank, which has been required by law, and given by the defendants as a condition of allowing the bank to withdraw from the custody of the officers of the state, or of its courts, the assets which, under the law, had become a fund sequestered for the benefit of all creditors, and differs in character from the stockholders' secondary liability, so far as being an asset is concerned, only in that the bond is not looked to by those dealing with the bank, and does not give it standing and credit, while the stockholders' liability is so far an asset as to help give credit to the bank as a going concern, but neither is an asset upon which the bank itself can realize.

And yet, while it is admitttd that by law the fund collected from the stockholders of a banking corporation by enforcement of this statutory liability is to be ratably distributed, it is urged by plaintiff in error that the money can be collected upon the bond in suit by an individual creditor, because the bond is not an asset of the bank.

We think there are two questions that have a greater bearing on the case before us, than the one referred to above. First: Is the bond sued upon such that the right under it is a joint right, or a several right? Second: Is the liability of defendants upon this bond direct and primary, or collateral and secondary? And then if we shall find the right is several, and the liability direct and primary, we have to inquire, is there any statutory or constitutional provision that overrides the usual rules of law governing this case upon such a finding?

In 1 Parsons, Contracts (9th ed.), page 13 *et seq.*, it is said:

"The question whether the *right* under a contract is joint or otherwise, enters more intimately into the nature of the contract, and therefore is of more importance; and it is at the same time of greater difficulty. * * * In general, all contracts, whether express or implied and

resulting from the operation or construction of law, are joint, where the interest in them of the parties for whose benefit they are created, is joint, and separate where that interest is separate.    But the interest which is thus important as a criterion is an interest in the contract, and not in any sum of money, or other benefit, to be received from it.  It is a strictly legal and technical interest created *by* the contract, and does not depend upon the condition or state of the parties aside from the contract.    *    *    * The circumstances of each case, and the situation and the relation of the parties, and the nature of the consideration, are all to be looked into, to ascertain who is really interested, and who has sustained the damage arising from a breach of the contract, and whether such damage was joint or several.    *    *    *    Parties are not said to be joint in law, merely because they are connected together in some obligation or some interest which is common to them both.    They must be so connected as to be in some measure identified.    They have not several and respective shares, which being united make a whole; but these together constitute one whole, which, whether it be an interest or an obligation, belongs to all."

In the case before us, the bond is not single but is upon condition, and creating a liability only to respond in damages for a breach of a condition requiring the performance on the part of the bank, of a duty to its several and numerous creditors, each creditor being only interested in the performance of that duty toward himself, and the bond creates a liability several as to the obligees.  The obligors can not invoke the rule of law preventing the splitting of causes of action, for the rule does not apply in such a case; their obligation is to each creditor individually, and each creditor has an individual claim for the amount of his damage occasioned by a breach of the condition, and an independent cause of action therefor, unless his rights are modified by some special law of this state.

The bond under consideration, it will be noticed, is for the use and benefit of all the depositors and creditors of

34

the bank, and is conditioned upon the making of full settlement with its several and numerous creditors and depositors.

The case of *Lyman v. City of Lincoln,* 38 Neb. 794, was an action brought against the obligors of a bond, given to the city of Lincoln, to secure the performance of a contract, a part of which required the contractors to file with the board of public works receipts of claims from all parties furnishing them with material and labor in the construction of an engine house, and it was held:

"That the promise they made to the city of Lincoln was for the benefit of all persons who furnished labor and material used in said contract and such persons could sue on said bond."

In *Sample & Son v. Hale,* 34 Neb. 220, one of the conditions of the bond was for the fulfillment of the agreement that:

"The first party further agrees to pay off and settle in full, with the parties entitled thereto, all accounts and claims that may become due by reason of laborers' and mechanics' wages, or for materials furnished or services rendered, so that each and all persons may receive his or their just dues in that behalf."

The bond in that case ran to the state of Nebraska and was a penal bond. The lower court, upon an agreed state of facts, found for the defendant, and dismissed the action which had been brought by the plaintiff on the bond, to recover for materials furnished to the contractor. The case was reversed and remanded. In the course of the opinion, the writer quotes with approval from *Baker & Co. v. Bryan,* 64 Ia. 561, where a similar bond was in question, this language:

"The parties for whose benefit these covenants were made may prosecute actions upon the instruments containing them."

The rights of the obligees upon the bond in the case before us are no less several than were those of the parties who were allowed to maintain their actions in the cases

cited, and we have no doubt this bond is several as to those for whose benefit and use it is made, and they may maintain several actions thereon unless restrained by other considerations.

Is the liability upon this bond direct and primary, or collateral and secondary?

Some little confusion on this question may have grown out of the fact that the condition of this bond is for the payment of money, so that obligors by paying damages for a breach thereof may seem to be fulfilling the condition, but that does not affect the character of the contract, and the liability is as direct and primary as though the condition had been to make good title to property. If the defendants are liable at all, it is upon the bond, and the liability, if any, is for damages for a breach of its condition. It is no more their legal duty to fulfill the condition of the bond than, in the case supposed, it would be to make good title. If the condition is fulfilled, their bond is *void,* not *paid.* If condition is broken, the bond is in force and the damages caused by the breach are due as part of the penalty and upon the bond, and not on the obligation creating the duty named in the condition.

The opening statement in Murfree, Official Bonds, sec. 1, is:

"A bond may be briefly defined to be a sealed obligation to pay money. It may be either single and absolute, or upon condition and contingency. However complicated may be the condition or contingency and however alien from pecuniary considerations may seem the inducements to its execution, or the circumstances surrounding the parties, a bond will always be found to resolve itself into an obligation to pay money sooner or later, either absolutely or upon some condition, or on the happening of some future event."

And in section 129 of the same work, it is said:

"The condition of a bond is the statement with necessary and appropriate recitals of the circumstances and contingencies under and upon which the bond shall become void.

The statement is necessarily in the alternative. In one case or contingency, the obligation is to become null and void, and the obligor's liability will be at an end; in the other his responsibility will become absolute and the condition is in such case said to be broken, and it is from a breach of the condition that nearly or quite all the litigation on this subject arises."

The same writer, in sec. 136, says:

"It is not necessary in the condition of a bond that all the details of its subject matter should be particularly and specifically rehearsed," and quotes Chief Justice Marshall as saying: " 'That is certain which may be rendered certain'; and an undertaking to perform the duties prescribed in a distinct contract or in a law, or any other known paper describing those duties, is equivalent to an enumeration of those duties in the body of the contract itself."

The bond in question then should be interpreted as though the several creditors of the bank were named in the condition, with the amount owing to each, specifically stated, for it is "full settlement of all the liabilities of said bank, with the several and numerous creditors and depositors thereof, within three years," that is named and its condition, and while this of itself, is uncertain as to who are the beneficiaries, and the amount of their claims, yet the duty that is to be performed by the bank and damages for the failure of which are secured by the bond, is a separate and distinct duty of the bank to each individual creditor, to pay to that creditor alone and individually, the amount of his separate claim, and, therefore, this condition may be made certain by reference to "other known papers prescribing those duties," which, as Chief Justice Marshall has said, "is equivalent to an enumeration of those duties in the body of the contract itself."

We think no further argument or reference to authority is necessary to show that the liability on the bond in question is direct and primary.

In *Farmers Loan & Trust Company v. Funk*, 49 Neb.

353, the effect of sections 4 and 7, article 11 of our
constitution, in regard to the liability of stockholders, and
the manner of its enforcement, was under consideration,
and in the course of the able opinion by commissioner
RYAN, it is said, on page 359:

"At common law, stockholders in a corporation proper
were not personally liable for its debts. Quite early in the
history of this country there were frequently inserted in
the charters of corporations provisions fixing the indi-
vidual liability of stockholders in certain contingencies.
When there were presented cases in which it was sought
to render effective these special provisions, the courts dif-
fered among themselves as to the nature of this liability,
the character of the fund arising from it, the persons en-
titled to sue, and the manner in which the action should
be brought. These four matters of difference, on examina-
tion, will be found to depend on one question, and that is
whether this liability is to be deemed to have been created
for the purpose of raising a trust fund for the payment of
the debts of the corporation, or whether it created the re-
lation of debtor and creditor directly between a creditor
of the corporation and one of its stockholders."

Commenting on the case of *Bank of Poughkeepsie v.
Ibbotson,* 24 Wend. (N. Y.) 473, the writer says (p. 360):

"It is clear that the circumstance that no judicial pro-
ceeding was necessary to entitle a creditor of the corpora-
tion to proceed against one of its shareholders somewhat
influenced the court, in the above case, to hold that a suit
at law might be maintained by the creditor against the
stockholder. Moreover, it is clear that the liability of the
stockholder to the corporation creditor was regarded as
primary and not in any degree secondary. These consid-
erations govern the cases which support the view that an
action at law may be maintained by a corporation cred-
itor against one of the stockholders to enforce an indi-
vidual liability imposed by the statute."

For a review of the authorities upon which that case
was decided, the profession is referred to its report and

we will further quote from the opinion the following extract, only (p. 367) :

"In argument it was stated that there could be no question of the proposition that a receiver could not maintain an action for the benefit of the creditors of the bank, and in support of this proposition there were cited 2 Morawetz, Corporations (2d ed.), sec. 869, and Cook, Stock and Stockholders, sec. 218. A reference to the authorities cited by these text writers discloses the fact that the author, in each instance, founded this proposition on the decisions of those courts which hold that the liability of an individual stockholder is to the creditors of the corporation, and, therefore, not enforceable as a trust fund for the benefit of all creditors of the corporation. It would logically result from these premises that a receiver could not bring an action against the stockholders, for, according to this theory, the actions must be by creditors as such in their own right. Even in this, however, there is not a uniformity of views, for the action in *Stewart v. Lay*, 45 Ia. 604, was by a receiver, although the supreme court of that state, under special statute, holds that the action must be at law. The proper view to be taken of this proposition is so well expressed in *Wilson v. Book, supra,* that we quote therefrom the following language: 'If the liability is secondary and for the benefit of all the creditors, it is a trust fund for the purpose of satisfying their claims.' "

In *Van Pelt v. Gardner,* 54 Neb. 701, commissioner RAGAN, who wrote the opinion, quotes with approval from *Patterson v. Lynde,* 106 U. S. 519, the following:

"The constitution of Oregon created no new right in this particular. It simply provided for the preservation of an old one. The liability under this provision is not to the creditors, but for the indebtedness. That is no more than the liability created by the subscription. The subscription is part of the assets of the corporation, at least so far as creditors are concerned. The liability of the stockholder to the creditor is through the corporation, not direct. There is no privity of contract between them, and the

creditor has not been given, either by the constitution or the statute, any new remedy for the enforcement of his rights."

And in *State v. German Savings Bank,* 50 Neb. 734, it is directly held in an opinion by commissioner IRVINE:

"That the constitution makes the liability of subscribers for unpaid subscriptions for the purpose of paying debts of the corporation, a secondary liability, to be enforced only after the amount of the debts has been judicially ascertained and other corporate property has been exhausted."

We are of the opinion that the right of the obligees under the bond in suit is several, and the liability of the obligors thereon is direct and primary; that there is privity of contract between the plaintiff and the defendants, and that this action can be maintained. No statutory or constitutional provisions have been suggested or discovered that prevent it. The decisions of this court holding the stockholders' liability under the constitution to be secondary, while holding that, by the wording of the provisions fixing such liability, an action by a general creditor to collect his individual claim from the stockholders is precluded, furnish no rule against this conclusion, while the direct holding of this court against what is termed the "trust fund theory," as applied to insolvent corporations, in *Merchants Nat. Bank v. McDonald,* 63 Neb. 363, and *Shaw & Co. v. Robinson & Stokes Co.,* 50 Neb. 403, convinces us that we have established no adverse judicial policy. An examination of chapter 8 of our statutes above referred to, discloses nothing to our minds inconsistent with the existence of the plaintiff's right to his action as commenced, while the conditions created by the action taken under that statute, strongly indicate that the intention of the legislature was to require the bond as a direct contract with the creditors, to insure full payment to each and all of them by fulfillment of the condition, or damages for its breach.

Under the statute, a receiver was applied for, and when

appointed, he would have been the one empowered to administer the trust covering the assets of the bank, enforce the statutory liability of its stockholders and distribute the proceeds. The bond sued upon was given to prevent the appointment of such receiver. The defendants contend that the trust continues and includes the bond, and that the officers of the bank are the trustees. The bank and its officers are the obligors in the bond, but deny their liability thereon. And so we have this situation—a trustee holding his own bond in trust, denying his liability thereon, while insisting that he is the only one that may bring action thereon. This can not be.

We conclude that plaintiff has right to this, his action upon the bond, and recommend that the judgment of the trial court be reversed and a new trial awarded.

BARNES and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed, and plaintiff is awarded a new trial.

REVERSED.

SEDGWICK, J., concurring.

When the assets of a bank have been so impaired as to render the ability of the bank to meet its liabilities doubtful, the law intervenes for the purpose of preserving the assets, preventing a further depreciation thereof, and insuring the fulfillment of its obligations by the bank so far as possible. If the bank can and will fulfill its obligations, there is no necessity for a receiver. The law, therefore, provides that the bank may give guaranties for the fulfillment of its obligations, and if that is done no receiver will be appointed. The fact that the law requires further guaranties for the fulfillment of its obligations on the part of the bank furnishes no reason for supposing that the intention is to change the character of the obligations of the bank in any particular. The bond, which is the contract of guaranty, provides for the carrying out of the

obligations of the bank as they were originally entered into, and the holders of those obligations may avail themselves of this guaranty, but their claims against the bank are not otherwise affected. I think, therefore, that the conclusion of the commissioners is correct.