PRATT & COMPANY, Appellant, v. LANGSTON MERCANTLE COMPANY, Respondent.

St. Louis Court of Appeals, February 7, 1905.

1. **BOND: Definition.** A written instrument containing a provision that a sum, affixed as a penalty, is binding upon the obligor, and conditioned that the penalty may be avoided by the performance of certain acts by the obligor, is a bond, although there is no surety.

2. **SALES: Warranty: Waiver.** A purchaser of goods by sample, under a contract containing a warranty that the goods should be of the same quality as the samples, and providing that the purchaser should examine the goods at once upon their arrival and within five days give notice to the seller if such goods should fail to comply with the warranty, received a consignment of goods and kept them on sale for thirty or forty days without notice to the seller that they were different from the samples. *Held*, the purchaser waived the warranty and could not rescind the sale and defend against an action for the price of the goods on the ground that they were inferior to the samples.

Appeal from Howell Circuit Court.—*Hon. W. N. Evans,* Judge.

REVERSED AND REMANDED.

*A. Mullinix·* and *Orchard & Livesay* for appellant.

*Livingston & Burroughs* for respondent.

(1) It devolved upon appellants to show a full compliance with the terms of the contract on its part before it was entitled to recover. Having failed in this, the demurrer to appellants' testimony should have been sustained. Freeman v. Aylor, 62 Mo. App. 613; Billups v. Daggs, 38 Mo. App. 367. (2) The instrument offered in evidence was the single obligation of Walter Pratt & Co., without surety, payable in another State, and did not come within the meaning and intendment of the contract. In construing a contract the intention of the parties must govern. Ellis v. Harrison, 104 Mo. 270; 16 S. W. 198; Hanna v. Land Co., 126 Mo. 1, 28 S. W. 652; Conrad v. DeMontcourt, 138 Mo. 311, 39 S. W. 805; Technical words or phrases which have acquired a peculiar and appropriate meaning in legal phraseology shall be construed according to such meaning. Clarkson v. Hatton, 143 Mo. 47, 44 S. W. 761. The promisor is bound according to the sense in which he apprehended that the promisee accepted the proposition. Bruner v. Wheaton, 46 Mo. 361. The parties evidently meant by the term "bond" an obligation with securities that could be sued on and enforced in the courts of that State, and not a mere obligation without sureties, to be enforced only in a foreign State. (3) The agreement to deposit a bond in bank was a condition precedent to the validity and force of the contract. Turner v. Mellier. 59 Mo. 526; Denny v. Kile, 16 Mo. 450; Beach on Mod. Law of Contracts, sec. 89. (4) There was ample proof of a

warranty of the goods by appellants. Graff v. Foster, 67 Mo. 572; Mfg. Co. v. Ball, 43 Mo. App. 504; Beach on Mod. Law of Contracts, secs. 254-5, Goods sold for a particular purpose known to the vendor, carry an implied warranty. Brewing Assn. v. McEnroe, 80 Mo. App. 429. Purchaser of chattels upon a false and fraudulent representation of quality made to him by seller at or prior to the sale, may rescind and return the goods. Spangler v. Kite, 47 Mo. App. 230. And the promisee is entitled to a reasonable time in which to rescind upon discovery of the fraud. Heating Co. v. Fixtures Co., 60 Mo. App. 148; Johnson v. Agricultural Co., 20 Mo. App. 100.

BLAND. P. J.—On March 10, 1902, plaintiffs, a copartnership, and defendant, a corporation, made and entered into the following contract:

*"Profits Guaranteed.*—Walter Pratt & Co. hereby guarantee that the purchaser's gross profits from the sale of the perfumery and toilet preparations under this order and hereafter purchased of said firm, will not be less than 33 1-3 per cent of the amount of this order each year for a period of three years from the date of invoice, and the said Walter Pratt & Co. further agree and hold themselves bound, at the end of each year, if the gross amounts do not amount to 33 1-3 per cent of the amount of this order for that year, to pay to the purchaser a sufficient amount of money by New York or Chicago draft to make up the deficiency, if there be any, or to buy back at the purchase price, at the expiration of this agreement, all goods remaining on hand at that time. The foregoing is conditional on the purchaser keeping the goods tastefully displayed in his store in the show case furnished by us for that purpose, purchasing from us at least semiannually sufficient goods to keep this department complete and up to the amount of this order, making settlement for all goods purchased of us as provided in order, sending us by registered mail at the end of each

year a complete and accurate list of all goods sold, with a correct inventory of all goods on hand at that time, allowing no article to go for less profit than is usually made on this class of goods and using reasonable diligence in promoting the sale of these goods. Goods shipped to purchaser and not on hand or returned will be considered sold.

"*Exchange.*—Any goods contained in this order may be returned to us for exchange at any time. To protect us from unreasonable demands for exchange, we require that goods so returned must be accompanied by a new order for goods of an equal value. We pay freight to factory on goods returned for exchange.

"*Warranty.*—All goods are warranted to be same in quality, material and in all other respects as sample shown by salesman. The purchaser agrees to examine and inspect the goods at once upon their arrival at their destination, and if said goods fail to comply with said warranty he shall within five days from the arrival at destination give detailed written notice of such failure by registered letter to Walter Pratt & Co., Chicago, Illinois; otherwise all warranty of said goods is waived. Goods cannot be returned for credit on account, except as herein provided. We deliver all goods to purchaser by delivering them to the transportation company herein specified, purchaser to pay all transportation charges."

This contract is followed by a long list of goods and the order quoted below:

"West Plains, Mo. March 10, 1902.
"Walter Pratt & Co.,
                "Chicago, Ill.

"Gentlemen:—Please ship us, care of Burlington, Cedar Rapids and Northern Ry., the assortment of goods listed above, like samples shown us by your salesman, at the prices specified, and in accordance with all the terms above specified; which we have carefully read and find to be complete and satisfactory. We have no agree-

ment or understanding with any salesman except as printed or written on this order. Receipt of duplicate of this order from your salesman is hereby acknowledged.

"Name of purchaser, S. J. Langston Mer. Co., Walter Pratt & Co., by J. M. Converse, Salesman."

The foregoing contract was indorsed on the margin as follows: "Walter Pratt & Co., agree to deposit bond for $194.20 in West Plains Bank for the faithful performance of this contract," all of which will fully appear by reference to the contract herein filed and marked "Exhibit A."

The first shipment of goods described in the order arrived at West Plains, Missouri, in a damaged condition and defendant refused to receive them and notified the plaintiffs, asking for a duplicate shipment which was immediately made. This shipment arrived in good order, was received by defendant and the goods opened and displayed for sale in its store. After keeping the goods from forty to fifty days and selling $6.40 worth of them, and finding, as defendant's testimony shows, they were unsatisfactory to its customers and unsalable, defendant boxed them up and shipped them back by rail to the plaintiffs. Plaintiffs refused to receive the goods and, being unable to make any settlement with defendant, brought this suit on the contract to recover the contract price of the goods, $194.20.

The answer set up as a defense that plaintiff's first breached the contract by failing to deposit the bond therein provided for, and alleged the inferiority of the goods.

The court instructed the jury, in effect, that plaintiffs could not recover, if they had failed to deposit the bond with the bank, as provided, and that the instrument they did deposit was not a bond. The verdict, of course under this instruction, was for the defendant. Plaintiffs appealed.

The instrument was deposited with the bank at or about the time the goods were shipped and reads as follows:

### "GUARANTEE BOND.

"Know all men by these presents, that we, Walter Pratt & Co., of Johnson county, State of Iowa, are held and firmly bound unto S. J. Langston Mercantile Co., of West Plains, Howell County, State of Missouri, in the penal sum of one hundred ninety-four and twenty one-hundredths dollars ($194.20) well and truly to be paid to S. J. Langston Mercantile Co. or their heirs or legal representatives.

"The condition of the above obligation is such that, whereas, the above bonded Walter Pratt & Co. did, on the twelfth day of March, 1902, sell and deliver to S. J. Langston Mercantile Company, of said West Plains, a bill of goods under a certain written contract, a copy of which is hereto attached, marked 'Exhibit A,' and by this reference made a part hereof, by the terms of which contract certain profits are guaranteed to said S. J. Langston Mercantile Co., on the goods named in 'Exhibit A.'

"Now, if said Walter Pratt & Co. shall well and truly comply with the terms of said contract, then this obligation shall be void; otherwise, to remain in full force and effect.

"Said S. J. Langston Mercantile Co. agree that they accept this bond with the limitations that all the provisions of the contract, of which said 'Exhibit A' is a copy, so far as they relate to them, shall be strictly and fully complied with as to time and manner, as a condition precedent to said obligors' liability hereunder.

"The above bond is not for the purpose of guaranteeing to said S. J. Langston Mercantile Co. profits as named in 'Exhibit A' only for a period of three years, and no other recovery shall be had thereon.

"This bond is made and executed at Iowa City, Iowa, and is there payable.

"Signed this twelfth day of March, 1902.

"WALTER PRATT & CO.

"Per WALTER PRATT.

"State of Iowa," County of Johnson, ss.

"I, Walter Pratt, of the firm of Walter Pratt & Co., being first duly sworn, on oath do state that the said firm of Walter Pratt & Co. is worth over fifty thousand dollars above all indebtedness of the said company, and that they have property subject to execution.

"Signed this twelfth day of March, 1902.

"WALTER PRATT.

"Subscribed in my presence and sworn to before me this twelfth day of March, 1902.

"O. M. ASHLEY, Notary Public."

"Exhibit A." attached to the bond, is a duplicate of the contract of March tenth and of the order and list of goods ordered by defendant of the plaintiffs on the same date.    For the reason the instrument is the single obligation of plaintiffs and is without surety, the respondent contends that it does not come within the meaning and intention of the parties to the contract. The intention of parties to a written contract is to be ascertained by the language they employ to express their intention.    The stipulation to deposit a bond for $194.20 with the West Plains Bank does not read that it shall be a bond with surety but simply a bond.    Now, if the instrument is such as comes under the legal definition of a bond, it fills the measure of plaintiffs' obligation to deposit a bond with the bank.    Bouvier says that a bond is a "simplex obligation."    Anderson, in his law dictionary, defines a bond to be "any instrument in writing that legally binds a party to do a certain thing. 'Bond,' 'obligation' and 'instrument in writing' are sometimes used in convertible terms."    [Anderson's Law Dict., p. 128.]

A bond has been judicially defined as follows: "An

obligation under seal." [Commonwealth v. Smith, 92 Mass. 448.] "A sealed obligation to pay money. . . . on the happening of some future event " (quoting Murfee on off. bonds)., [Rawson v. Taylor, 95 N. W. 1033.] "A clause that a sum affixed as a penalty binding a party to pay the sum, conditioned, however, that the payment of the penalty may be avoided by the performance by one or more of the parties of certain acts." ˙ [United States v. Rundle, 100 Fed. Rep. 400.] "An instrument that implies an obligor bound to do what is agreed shall be done." [Davenport v. Dodge County, 105 U. S. 237.] "Any instrument in writing that legally binds a party to do a certain thing." [Conrand v. Vollmern, 31 Texas 397.]

Since the abolition of private seals in this State (section 893, R. S. 1899) any written instrument containing a clause that a sum affixed as a penalty, is binding, the obligor to pay the same, conditioned that the penalty may be avoided by the performance of certain acts by one or more of the obligors, is a bond. The instrument deposited by plaintiff with the West Plains taining a clause that a sum affixed as a penalty, binding plaintiffs to pay the same, conditioned that it may be avoided by the plaintiffs performing their part of the contract thereto attached and which is expressly made a part of the instrument, and is, therefore, to all intents and purposes, a bond, and such a bond as the contract provided should be deposited with the West Plains Bank. It follows, therefore, that the learned circuit judge erred in instructing the jury that the instrument was not a bond. He should have instructed, as moved by the plaintiffs that the instrument was a bond and complied with the obligation of plaintiffs to give a bond.

2. The goods were warranted to be the same in quality, material and in all other respects as the samples shown by the salesman. The warranty clause fur-

ther provides: "The purchaser agrees to examine and inspect the goods at once upon their arrival at their destination, and if said goods fail to comply with said warranty he shall, within five days from the arrival at destination, give detailed written notice of such failure by registered letter to Walter Pratt & Co., Chicago, Ill., otherwise all warranty of said goods is waived." The goods were sold to defendant by sample.

S. J. Langston, a member of the defendant corporation, testified that he had handled perfume for about twenty-five years and after keeping the goods displayed for sale in the storeroom for about forty or fifty days and making every effort to sell them, he found they were inferior in quality, did not correspond with the samples and were unsalable; that after ascertaining these facts, he boxed them up and shipped them back to the plaintiffs.

A saleswoman in defendant's store testified that the goods were displayed in her department and she received instructions to push their sale and that she made every effort in her power to sell them but discovered that the goods were inferior in quality by testing them and that they were unsalable.

On this point, plaintiffs' testimony shows that the perfume was maunfactured under the superintendence of a chemist from the very best of imported pomades and that the goods were first class; that the samples exhibited to defendant, from which it made its order, were taken from the general stock and correspond in every respect with the goods shipped to the defendant. The jury, however, was not instructed, nor asked by either party to be instructed, on this feature of the case, but as the judgment must be reversed and the cause remanded for new trial, we deem it proper to take some notice of this evidence in connection with the contract. Now, suppose the goods did not come up to sample, could the defendant, under the contract, rescind after keeping the

goods form forty to fifty days?   Defendant agreed to inspect the goods immediately upon their arrival and, if found unsatisfactory, to notify plaintiffs by registered letter within five days and, if it failed to do so, it agreed such failure should be taken as a waiver of all objections to the goods.   Langston, a member of the corporation, testified that he had dealt in perfume for twenty-five years.   There is no evidence that he or any one for the defendant, inspected the goods on their arrival, but the evidence shows they were unpacked and conspicuously displayed in defendant's store and kept on sale from forty to fifty days and that not until after this, was plaintiffs notified (if notified at all) that the goods did not come up to sample.   This evidence conclusively shows that defendant, by keeping the goods without objection until long after the time it was stipulated in the contract it should object, if the goods were found inferior to sample, waived all objections to them; hence its attempt to rescind the contract was ineffectual and affords it no defense to the action.

The judgment is reserved and the cause remanded. All concur.