[Civ. No. 6974. Second Appellate District, Division One.—January 8, 1932.]

CHARLES KARSH, Respondent, v. FIDELITY UNION CASUALTY COMPANY (a Corporation), Appellant.

Hiram T. Kellogg for Appellant.

G. C. DeGarmo and W. M. Crane for Respondent.

BISHOP, J., *pro tem.*—The defendant corporation appeals from a judgment entered against it on a bond executed on its behalf by a Mr. Frederic, its attorney-in-fact. The judgment is attacked on several grounds, which may be summed up in these. The bond by its terms is not a binding obligation; its execution by Frederic does not bind the appellant. With neither of these propositions did the trial court agree, and neither do we.

Much of the situation, out of which the transaction in question grew, is given us in a sketchy fashion, yet sufficiently in full for the purposes of this appeal. Certain contractors were engaged in building a house, the cost of construction being financed in part, at least, by the proceeds of a first mortgage loan, deposited in a bank in the name of appellant, and subject to the joint control of Frederic and the contractors. J. A. Waldorf was a subcontractor, desirous of some money in advance of its due date. An order for $2,000 payable to Waldorf, addressed to "Frederic, attorney-in-fact, Fidelity Union Casualty Company", and signed jointly by the owner of the building under construction and the contractors was presented to the respondent for discount. He agreed to take it, giving two checks, one for $1740 and one for $40, drawn in favor of Waldorf and appellant. As a part of the transaction a written document was given to the respondent, dated November 5th, the recitals of which, somewhat condensed, were substantially these: The Fidelity Union Casualty Company is held and firmly bound to Charles Karsh in the sum of $2,000, for the payment of which sum on or before sixty days from date, it binds itself; that the condition of the obligation is such that, whereas an order was executed in favor of Waldorf, as a part of the contract price due or to become due him, and Charles Karsh, in consideration of the execution of this instrument, agreed to and has bought the order. Now, therefore, the condition of this obligation is such that if the said sum of $2,000 shall be paid under said order on or before sixty days, this obligation shall

be void, "otherwise said surety herein named, does hereby expressly promise and agree that it will promptly on or before three days after said sixty days due date herein mentioned" pay the sum of $2,000. This instrument had affixed to it the name of appellant by Frederic, attorney-in-fact, and bore appellant's corporate seal. A short time after its execution Frederic informed the respondent that Waldorf objected to so great a discount, in view of the certainty that the order would be honored in much less than sixty days, and the respondent gave Frederic two checks in exchange for the two first given, the new checks being for $1840 and $40, respectively. These checks were payable to the appellant alone, and were deposited by Frederic in its account. Subsequently, the sum of $1880 was withdrawn from appellant's account by Frederic, Waldorf getting none of it, nor did appellant see it again. Frederic (to complete the picture, we note it), also gave respondent a check for $100, to be cashed if the order was not paid at as early a date as was represented. The order was not paid, either early or within the sixty days, nor was the $100 check cashed when presented.

As a subdivision of one of his arguments appellant's counsel urges that the instrument just set forth created no obligation, because as there was no liability under the order, there can become no liability on the instrument guaranteeing the order. This argument begs the question, it seems to us, in assuming that the November 5th instrument has no effect other than that of guaranteeing an unaccepted order. If we have an unaccepted order, then we have, not a contract of guaranty, but a strict obligation to pay money, released only by the payment of the order voluntarily. Whether the order is a binding obligation or not, if it is not paid there remains an obligation to pay under the November 5th contract.

Appellant's counsel further argues that Frederic never had any authority to execute, on behalf of appellant, such an instrument as that herein sued upon. This leads us to view the power of attorney under which Frederic had been acting some time prior to November 5th. Its pertinent portions are these: "The Fidelity Union Casualty Company . . . does hereby . . . appoint Jay G. Frederic . . . its true and lawful Agent and Attorney-in-fact, to make, execute, seal

and deliver for and on its behalf and as its act and deed any and all bonds and undertakings, recognizances, contracts of indemnity, and other writings obligatory in their nature.'' We are of the opinion that the instrument in question is covered by the power thus conferred. In *Walter Pratt & Co.* v. *S. J. Langston Mercantile Co.*, (1905) 111 Mo. App. 96 [85 S. W. 134, 136], a number of definitions of ''bond'' are quoted: ''Bouvier says that a bond is a 'simplex obligation'. Anderson, in his Law Dictionary, defined a bond to be 'any instrument in writing that legally binds a party to do a certain thing. ''Bond'', ''obligation'', and ''instrument in writing'' are sometimes used in convertible terms'. (Anderson's Law Dict., p. 128.) A bond has been judicially defined as follows: 'An obligation under seal.' (*Commonwealth* v. *Smith*, 92 Mass. (10 Allen) 448 [87 Am. Dec. 672].) 'A sealed obligation to pay money . . . on the happening of some future event' (quoting Murfree on Off. Bonds). (*Rawson* v. *Taylor*, 63 Neb. 473 [95 N. W. 1033].) 'A clause that a sum affixed as a penalty binding a party to pay the sum, conditioned, however, that the payment of the penalty may be avoided by the performance by one or more of the parties of certain acts.' (*United States* v. *Rundle*, 100 Fed. 400 [40 C. C. A. 450].) 'An instrument that implies an obligor bound to do what is agreed shall be done.' (*Davenport* v. *Dodge County*, 105 U. S. 237 [26 L. Ed. 1018].) 'Any instrument in writing that legally binds a party to do a certain thing.' (*Courand* v. *Vollmer*, 31 Tex. 397.)'' The instrument is a bond, and as Frederic was authorized to sign bonds by the power of attorney given him, his execution of it bound the appellant. This same power of attorney was under review before this court in the recent case of *California Standard Finance Corp.* v. *Bessolo*, (1931) 118 Cal. App. 323 [5 Pac. (2d) 478], where a similar conclusion was reached.

Whether or not appellant had terminated the agency of Frederic before November 5th does not clearly appear, and we are of the opinion that the trial court was warranted by the evidence in concluding that the power of attorney was still in effect on November 5th. Appellant's counsel, early in his brief, argues that respondent was put on notice that Frederic did not have authority to execute

the bond on behalf of the company, but the evidence advanced in support of the argument tends to prove that respondent should have suspected that the power of attorney had been revoked, but does not support the conclusion that it had been.

If, however, the power of attorney had been revoked prior to November 5th the circumstances were such that Frederic's acts still bound the appellant to the respondent. It appears that the bond involved in the case at bar was not the first of its kind Frederic had executed in connection with the purchase by respondent of these orders, a fact which was well known to the company. If Frederic's authority had been terminated, respondent knew nothing of it. Whether suspicious or merely cautious, however, the respondent on October 25th sent a telegram to the president of the appellant company, stating that he (respondent) had been receiving bonds of the appellant, signed by Frederic, attorney-in-fact, and requesting a statement as to what extent Frederic's power of attorney held good. The reply was: "Frederic formerly represented us. Entire matter handled by our Los Angeles office to whom your telegram is being referred." On the same day, October 26th, on which the telegram was received, a Mr. Rimassa, superintendent of insurance for the appellant, came from the Los Angeles office, because of respondent's telegraphic inquiry, and said that Frederic was still acting as appellant's attorney-in-fact. Rimassa took a list of the bonds already executed to check over, and in a few hours telephoned that the office had a record of them. Upon respondent's request "in order to do further business with them", Rimassa confirmed his report with this letter on the letter-head of the Fidelity Union Companies, Los Angeles, Cal.:

"Confirming our conversation of this morning, any bond signed by Jay G. Frederic as attorney-in-fact for the Fidelity Union Casualty Company, and bearing our seal imprint, is an authentic document of our company. Thanking you for your interest, we are,

"Your very truly,<br>
"FIDELITY UNION CASUALTY COMPANY,<br>
"By (Sgd.) JOHN RIMASSA."

Rimassa, appellant's vice-president testified, was sent to Los Angeles to check up on appellant's bond business.

The bond in question was not only signed by Frederic as indicated, shortly after the receipt of this letter, but it was signed by him in the presence of the vice-president of the appellant corporation, who was present because the corporate seal had been sent for, and who made the impression of the seal on the bond upon which judgment was given.

In view of these facts, established by competent evidence, we think further comment is unnecessary.

The judgment is affirmed.

Conrey, P. J., and Houser, J., concurred.