[Civ. No. 8941. First Appellate District, Division One.—February 21, 1934.]

N. A. ANDERSON, Appellant, v. FIDELITY UNION CASUALTY COMPANY (a Corporation), Respondent.

Richard J. O. Culver for Appellant.

Hiram T. Kellogg for Respondent.

JAMISON, J., *pro tem.*—This action was brought by plaintiff to foreclose a mechanic's lien for labor and material furnished in a building owned by defendant Paul I. Johnson under a subcontract entered into between plaintiff and defendant Bessolo & Gualano, Inc., and to recover from it the value of said labor and material, and also to recover from defendant, the Fidelity Union Casualty Company, the value of said labor and material under the alleged guaranty executed by said company. It was stipulated that the action for the foreclosure of the mechanic's lien was waived for the reason that the building against which the lien was claimed had been sold under a prior encumbrance. Johnson had executed his promissory note for $1500 to plaintiff in part payment of said claim. Judgment was rendered against said Johnson for the amount evidenced by said promissory note and against Bessolo & Gualano, Inc., for the remainder of plaintiff's claim, and against plaintiff and in favor of the Fidelity Union Casualty Company. From the judgment in favor of the Fidelity Union Casualty Company plaintiff appeals.

It appears from the evidence produced by appellant, respondent declining to produce any, that defendant Johnson, desiring to have an apartment house constructed, entered into a contract with Bessolo & Gualano, Inc., for that purpose. The contract price for the completion of the building was the sum of $160,000, $100,000 of this amount to be furnished by the Western Loan & Building Co., secured by a mortgage, and a deed of trust to be executed for $45,000, the remaining $15,000 to be paid by the said owner.

Prior to September 14, 1928, appellant was solicited by Bessolo & Gualano, Inc., the general contractor in charge of the construction of the said building, to take a subcontract from it for the brick work. Appellant, not being satisfied with the financial ability of either the said general contractor or the owner to meet his obligations, refused to sign said contract for the brick work until he received assurance that he would be paid. Having been informed that respondent, through its attorney-in-fact, Jay G. Frederic, was guaranteeing the payment of work done on said building, appellant called upon Frederic at his office and informed him that he would not sign the contract for the brick work unless respondent would guarantee its payment. Thereupon, Frederic stated to appellant that if he would take the building up to the roof he would be paid in full, and that respondent would give him a guaranty to that effect. On September 17, 1928, the said Frederic executed and delivered to appellant an instrument in writing which is as follows: "Fidelity Union Casualty Company, Los Angeles, California, September 17th, 1928. Mr. N. A. Anderson, Los Angeles California. Dear Sir:—In re: Paul I. Johnson, Job, 1848 N. Gramercy Pl. Los Angeles, California. We hereby accept and approve contract between you and Bessolo & Gualano, Inc., general contractors under the above caption, covering the furnishing of labor and materials necessary for the completion of all brick work going into the above job. The contract price is $13,000.00, payable as and when received by the general contractors from the mortgage company, making the building loan on said property, as the building progresses; viz., the sum of $11,500.00 when the roof is on (designated as the 'second draw'). It is further understood that you have accepted a Trade Acceptance in the amount of $1,500.00 covering balance due under your subcontract as herein recited. The purpose of this letter is to assure to you that payment will be made in accordance with the foregoing terms. Yours very truly, Fidelity Union Casualty Company, By Jay G. Frederic, Attorney in Fact." Upon the execution and delivery of this instrument appellant executed the subcontract for the said brick work.

The power of attorney under which Frederic acted provided that as such attorney he was authorized to make, execute, seal and deliver for and on behalf of respondent,

as its act and deed, any and all bonds, undertakings, recognizances, contracts of indemnity and other writings obligatory in their nature. This power of attorney was duly executed by respondent.

Respondent in its brief says that the sole question before the court on this appeal is this: "Did Jay G. Frederic have the authority to execute the instrument here sued upon?" It follows this with the further statement that the trial court must have decided the said instrument did not constitute a binding agreement, or that said Frederic by virtue of his power of attorney did not have authority to bind respondent. If the language used in the said instrument can be construed to be a binding obligation, then under the authority of *Karsh* v. *Fidelity Union Casualty Co.*, 119 Cal. App. 543 [6 Pac. (2d) 980], and *California S. F. Corp.* v. *Bessolo & Gualano, Inc., et al.*, 118 Cal. App. 323 [5 Pac. (2d) 478], it would bind respondent. Both of these cases arose upon instruments executed by Frederic purporting to act as attorney-in-fact for the indemnifying companies.

The contract entered into between appellant and Bessolo & Gualano, Inc., for said brick work provided that he should be paid the sum of $13,000, of this sum $11,500 to be paid him when the roof was on (designated as the "2nd Draw"), payable out of the funds as received by the general contractor as the building progressed. The $100,000 furnished by the Western Loan & Building Co. was to be paid in installments as the work on the building progressed. By agreement of all the interested parties, the respondent and Bessolo & Gualano, Inc., were given joint control of the building funds, and checks for payment of the work done on said building were issued to them.

About the 1st of December, 1928, appellant called upon Frederic at his office and in the presence of a Mr. Chatfield, vice-president of respondent, stated to Frederic that he was informed Bessolo & Gualano, Inc., were in financial difficulties, and asked him if that condition affected the work upon which appellant was engaged. In reply to this question Frederic said that while that condition might be true of other jobs on which they were engaged it did not exist as to the job upon which appellant was working, for him to go ahead with the work and that everything would be all right.

Appellant completed the brick work about the middle of December, 1928.

In February, 1929, appellant called upon a Mr. Lund, who was the district manager of the Western Loan & Building Co., for payment of his claim. At this time there was some $65,000 unexpended in the loan fund. Chatfield, the vice-president, was present at this interview. Lund suggested that appellant be paid fifty per cent of his claim, but Chatfield refused to do this until the building was finally completed. No part of the $11,500 has ever been paid appellant.

A guaranty is defined by the Civil Code, section 2787, as a promise to answer for the debt, default or miscarriage of another person. And a contract of guaranty is a contract for the direct payment of money. (*Tyson* v. *Reinecke*, 25 Cal. App. 696 [145 Pac. 153]; *Mahana* v. *Alexander*, 88 Cal. App. 111 [263 Pac. 260].) The alleged guaranty in the instant case was prepared by respondent. Therefore, conceding that there is any uncertainty therein, it is to be most strongly interpreted against it. (Civ. Code, sec. 1654.)

As was said in *London & San Francisco Bank* v. *Parrott*, 125 Cal. 472, 482 [58 Pac. 164, 165, 73 Am. St. Rep. 64]: "But for the purpose of ascertaining the meaning of the language which he has used, and thus determining the extent of his guaranty, the same rules of construction are to be applied as are applied in the construction of other written instruments. His liability is not to be extended by implication beyond the terms of his guaranty as thus ascertained. The language used by him is, however, to receive a fair and reasonable interpretation for the purpose of effecting the objects for which he made the instrument, and the purpose to which it was to be applied." (*Austin* v. *Union Paving etc. Co.*, 4 Cal. App. 610 [88 Pac. 731].)

"The whole of a contract must be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Civ. Code, sec. 1641.) "If the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." (Civ. Code, sec. 1649.)

42

The evidence in this case is undisputed that appellant would never have signed the contract for the brick work had not respondent, through its attorney-in-fact, obligated itself to see that he was paid for said work. He went ahead with the work relying solely upon its agreement that it would see that he was paid for it. Respondent had joint control, with the general ntractor, of the fund advanced by the Western Loan & Building Co. to apply on the work done on the building. The agreement executed to appellant by Frederic, under said power of attorney, provided that the contract with the general contractor for the brick work was accepted and approved; that the contract price was $13,000, and deducting therefrom the trade acceptance of $1500 left a balance of $11,500 which was payable when received by the general contractor; that this sum was to be paid when the roof was on. Then followed the assurance that payment would be made in accordance with the foregoing terms. While technically the agreement may not have contained all the elements of a guaranty, yet, nevertheless, it constituted an obligation and came within the authority conveyed by the power of attorney.     Respondent contends that there was no consideration for the said agreement for the reason that the seal of the company was not attached thereto. There is no merit in this contention. Section 1614 of the Civil Code provides that "a written instrument is presumptive evidence of a consideration", and section 1615 of said code places the burden of proving want of consideration to support a written instrument upon the party seeking to invalidate or avoid it.

The judgment is reversed, with directions to the trial court to enter judgment for appellant against respondent in the sum of $11,500 with interest thereon at the rate of seven per cent per annum from July 15, 1929, until paid.

Tyler, P. J., and Knight, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 20, 1934.