[Civ. No. 24368.   Second Dist., Div. Three.   Oct. 27, 1960.]

WEBSTER THRIFT AND LOAN (a Corporation), Respondent, v. HARTFORD ACCIDENT AND INDEMNITY COMPANY (a Corporation), Appellant.

Brown & Brown, Paul P. Selvin and Nimmer & Selvin for Appellant.

Kirsch & Arak and Gerald I. Neiter for Respondent.

SHINN, P. J.—This is an action against the surety on a used car dealer's bond. The court made findings and entered judgment in favor of plaintiff in the amount of $2,354.66. Defendant appeals from the judgment and has noticed an appeal from an order overruling its demurrer to the amended complaint. On December 20, 1956, Advance Motors, Inc., a used car dealer, sold a 1955 Cadillac automobile to David Duvall, one of its employes, under a contract of conditional sale. On or about the same date, the contract was assigned to plaintiff, Webster Thrift and Loan, with recourse, for $2,800, which the court found to be the reasonable value of the car at that time. The assignment provided as set forth in the footnote.[1]

Plaintiff did not obtain the ownership certificate to the Cadillac upon paying the $2,800 and taking an assignment of the contract from the dealer. After receiving two payments totaling $445.34 on the contract balance, plaintiff made demand upon Advance Motors for the certificate on or about May 24, 1957. At that time plaintiff discovered that the car had been resold, although the record does not disclose whether it had been resold by the dealer or by Duvall, or both.

Paragraph VII of plaintiff's complaint reads as follows: "That pursuant to the provisions of Section 24.03 of the Municipal Code of the City of Los Angeles, defendant HARTFORD ACCIDENT AND INDEMNITY COMPANY issued a used car dealer's bond in the sum of $10,000.00 to the City of Los Angeles, and to any person, firm or corporation suffering loss or damage as the result of the sale of a used motor vehicle by the principal ADVANCE MOTORS, INC. as a used car dealer, including failure to deliver a clear title to any person entitled thereto within twenty-one (21) days after final payment has been made." In its answer thereto, defendant alleged as fol-

---

[1] "That by this assignment Assignee acquires full title to said contract and to the chattels sold thereunder free and clear of any and all liens, encumbrances and lawful claims of every nature excepting only the rights of Buyer under said contract."

lows: "Answering paragraphs VII and X, defendant admits that it issued its bond pursuant to the provisions of Municipal Code § 24.03 in the sum of $10,000.00 and that plaintiff made demand upon this defendant for payment and further admits that defendant has refused and still fails and refuses to pay to plaintiff the amount of the alleged loss and alleges further in answer to said paragraphs that plaintiff has not suffered any loss entitling it to recover under the provisions of said Municipal Code or the bond issued by defendant pursuant thereto."

It is contended that there was no proof of the city ordinance under which the bond was given. The suit was on the bond, which, admittedly, was given pursuant to an ordinance. Since the material obligation of the bond upon which the action was brought was pleaded and admitted it was unnecessary to prove other terms, if any, of the ordinance.

Likewise, there is no merit in the point that there was a failure to prove the terms of the bond. The court was furnished with a specimen of the bond, without objection. This was sufficient.

Since the specimen of the bond was in evidence and its execution was admitted we mention that it read in material part: "That we, ———————————, as Principal, and HARTFORD ACCIDENT AND INDEMNITY COMPANY, a corporation organized and existing under the laws of the State of Connecticut, and authorized to transact a general surety business in the State of California as surety, and held and firmly bound unto the CITY OF LOS ANGELES, a municipal corporation, and to any person, firm or corporation, suffering loss or damage as a result of the sale of a used motor vehicle by the Principal as a used car dealer, including failure to deliver a clear title to any person entitled thereto within 21 days after final payment has been made, in the just and full sum of TEN THOUSAND DOLLARS, ($10,000.00), lawful money of the United States of America, for the payment of which, well and truly to be made, we bind ourselves, our heirs, executors, administrators, successors, and assigns, jointly and severally, firmly by these presents."

The decisive question on the appeal is whether the court erred in ruling that plaintiff is a member of the class protected by the bond.

In urging a reversal of the judgment defendant contends that the bond was executed solely for the protection of

purchasers of used cars under conditional sale contracts and that plaintiff, as the assignee of a conditional sale contract, was not a purchaser within the purview of the bond. We are unable to agree with this contention.

Under the provisions of the bond, liability is imposed upon the surety for loss or damage sustained by any person "as a result of the sale" of a used car by the dealer, including the "failure to deliver a clear title to any person entitled thereto within 21 days after final payment has been made."

It is clear that Duvall was protected by the bond. The contract of conditional sale was a "sale" within the purview of the bond. But the assignment of the contract to plaintiff which transferred "full title to said contract and to the chattels sold thereunder," (excepting the rights of Duvall), was also a sale of the car. There was as good reason for the protection of plaintiff as for the protection of Duvall. Either one was entitled to legal ownership of the car upon performance of his contract with the dealer. The obligation of the bond was not limited to indemnification of Duvall if he should fail to get title to the car after he had paid for it.

The most defendant can contend is that the bond is ambiguous in stating that it runs in favor of "any person, firm or corporation, suffering loss or damage as a result of the sale of a used motor vehicle," leaving it uncertain whether it protects the assignee of the contract, as well as the conditional contract purchaser.

If we assume there is ambiguity the bond must be construed most strongly against the insurer. This is the rule where there is uncertainty as to the identity of the insured and the scope of the bond. (Civ. Code, § 1654; *Arenson* v. *National Automobile & Cas. Ins. Co.,* 45 Cal.2d 81 [286 P.2d 816]; *Anderson* v. *Fidelity Union Casualty Co.,* 137 Cal.App. 37 [29 P.2d 865].)

The assignment of the contract, which also transferred ownership of the car, must be deemed a sale, as a result of which plaintiff suffered a loss of $2,354.66. Plaintiff was entitled to a transfer of the ownership certificate with the assignment of the contract. It could then have surrendered the certificate and had a new one issued in its name as legal owner. (Veh. Code, § 6050.)

The Vehicle Code prescribes a complete scheme of registration of motor vehicles for the protection of owners and the public against loss through mistake or fraud. We are

of the opinion that when a dealer sells to a financing agency a contract of conditional sale there is an obligation to transfer the certificate of ownership.[2]  Failure to do so would leave the financing agency at the mercy of the dealer or an innocent purchaser to whom he might sell the car. (*Parke* v. *Franciscus,* 194 Cal. 284 [228 P. 435].)

Plaintiff's loss was suffered as a result of the retention by the dealer of the certificate of ownership and it was as directly a result of the dealer's failure to transfer the ownership certificate as would have been the loss of Duvall if, after having paid in full for the car, he had discovered that the dealer had sold it and conveyed title to some one else.

The purported appeal from the order overruling defendant's demurrer is dismissed and the judgment is affirmed.

Vallée, J., and Ford, J., concurred.

[2]Vehicle Code, section 5753, provides: ''It is unlawful for any person to fail or neglect properly to endorse, date, and deliver the certificate of ownership and, when having possession, to deliver the registration card to a transferee who is lawfully entitled to a transfer of registration.''