[Civ. No. 32337.   Second Dist., Div. Five.   May 22, 1969.]

BEVERLY FINANCE COMPANY, Plaintiff and Respondent, v. AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, Defendant and Appellant.

BANKERS AND SHIPPERS INSURANCE COMPANY, Plaintiff and Respondent, v. BEVERLY FINANCE COMPANY, Defendant and Appellant.

(Consolidated Cases.)

Robert E. Herrmann for Defendant and Appellant American Casualty Company.

Styskal, Wiese & Colman and Alvin O. Wiese, Jr., for Defendant and Appellant and Plaintiff and Respondent Beverly Finance Company.

Thomas P. Menzies, James O. White and Anthony E. Shafton for Plaintiff and Respondent Bankers and Shippers Insurance Company.

AISO, J.—This appeal involves litigation which started as two separate actions, one for conversion (No. 839225) and the other for declaratory relief upon a statutory vehicle dealer's bond (No. 828311), which arose from a finance company's purchasing a conditional sales contract covering a certain

Cadillac automobile, which later turned out to be a stolen vehicle. The two cases were consolidated and one judgment based upon a single consolidated set of findings and conclusions was entered.

Beverly Finance Company, a California corporation ("Beverly Finance"), appeals from that part of the judgment which awards $6,338.34 damages, together with costs, against it and in favor of Bankers and Shippers Insurance Company, a corporation ("Subrogee-Owner"), in the conversion action (No. 839225), claiming the amount thereof to be erroneous.

American Casualty Company of Reading, Pennsylvania, a corporation ("Surety") appeals from that part of the judgment which declares it liable to Beverly Finance on its vehicle dealer's bond in the declaratory relief action (No. 828311).

### The Facts

The facts are not in dispute. Some time prior to May of 1962, a 1961 Coupe DeVille Cadillac automobile owned by the Forest Cadillac Co. of St. Louis ("Forest") was stolen from its car-lot in St. Louis. Pursuant to a policy of insurance which it had issued, the Subrogee-Owner paid Forest $5,315.51 for the loss and took back an assignment of Forest's rights in the vehicle.

On August 27, 1962, a Robert Griffin ("Griffin"), not a party to these actions, completed an application for registration of the vehicle with the California Department of Motor Vehicles ("DMV") as a nonresident vehicle, holding himself out as both the legal and equitable title holder under an Indiana Certificate of Title, dated April 3, 1962. The DMV inspector, who checked the vehicle, reported that neither the engine number nor the I.D. number appeared to have been tamperd with or altered. California registration was successfully effected by Griffin.

The Cadillac was acquired from Griffin "by trade or purchase" by the "defaulting" cross-defendant,[1] David Rosenbaum dba Tay Motors, 1015 N. Vermont Avenue, Los Angeles.

---

[1] Although named as a defendant in action No. 828311, Rosenbaum was never served with summons and complaint. He was served with the cross-complaint for indemnity, which defendant Surety filed in this action. He filed an answer to the cross-complaint, but did not appear for trial. In the cross-complaint he is named as "David Rosenbaum" only. Other pleadings and documents refer to "David Rosenbaum," "David Rosenbaum dba Tay Motors," "David James Rosenbaum dba Tay Motors," or merely to "Tay Motors." There is no dispute that each of these appellations refers to the same person.

Surety had written a vehicle dealer's bond required by sections 11710 and 11711 of the Vehicle Code, on which "David Rosenbaum dba Tay Motors" was named as principal, and by which he obtained a license as a vehicle dealer.

On November 1, 1962, "Tay Motors" sold the Cadillac to Warren S. Bradley and Jerri Bradley on a conditional sales contract, which reflected a down payment of $1,034 and a balance of $5,292 to be paid off by the Bradleys in 36 monthly installments. On the same date, Deane Sellon, a vice-president of Beverly Finance, inspected the car and checked its serial number. It did not appear to him that the title to the car or the serial number was "invalid or forged."

On November 2, 1962, "Tay Motors" sold (assigned) and Beverly Finance purchased the conditional sales contract for $3,700. The assignment recited in part: "such assignment being made WITHOUT RECOURSE in consideration of the following representations and warranties: . . . (e) that the assignor has the full and complete title to the property sold, subject only to the rights of said purchaser; . . ."

On November 26, 1962, the DMV issued a registration slip which named Warren Bradley as the registered owner and Beverly Finance as the legal owner.

Bradley having defaulted in his payments, Beverly Finance repossessed the Cadillac in March of 1963 and on April 19, 1963, filed an affidavit of repossession with the DMV. On May 3, 1963, the DMV issued an ownership certificate to Beverly Finance. The DMV records include a "verification of vehicle" which certifies that another inspector on May 28, 1963, verified that he rechecked the vehicle and that neither the engine number nor the ID number appeared to have been altered or tampered with.

Griffin in the meantime had obtained a duplicate ownership certificate on December 4, 1962, claiming to have lost the original. Using this duplicate, it appears that he sold another Cadillac to Beverly-Wilshire Motors, which in turn sold this second Cadillac to a Nadine Skolnick on January 22, 1963. The fact that it had issued several ownership certificates covering a vehicle with the same identification number came to the notice of the DMV, which on June 28, 1963, notified Beverly Finance by letter reading in part: "You were informed on May 27, 1963 that two ownership certificates had been issued to the above described Cadillac."

In July or August of 1963, the Subrogee-Owner made a demand upon Beverly Finance for the Cadillac. On September

28, 1964, the Cadillac in question in this litigation was sold, pursuant to a stipulation between Beverly Finance and the Subrogee-Owner, in order to mitigate damages.

On October 23, 1964, the DMV notified Beverly Finance that it had been informed by the National Automobile Theft Bureau that the Cadillac had had its "public frame number ground off and a fictitious number stamped" in its place, and demanded the return of the ownership certificate, issued November 26, 1962, designating Beverly Finance as the legal owner.

Other facts will be stated when relevant to the discussion.

### No Error in Amount of Damages

The trial court concluded that a conversion of the Cadillac was committed by Beverly Finance on November 2, 1962, when it took an assignment of the conditional sales contract from "David Rosenbaum," which carried with it a claim of legal title to the vehicle adverse to that of the true owners. It also found that the value of the vehicle on that date was $4,890. The court awarded the Subrogee-Owner this sum of $4,890, together with interest thereon at the legal rate of 7 percent from November 2, 1962, to January 26, 1967, (on which date the two-day trial was concluded) in the sum of $1,448.34, totalling $6,338.34, together with costs of suit in the sum of $67.85.

We find no error in this action of the trial court. ▮ It is settled law that conversion is any act of dominion wrongfully exerted over another person's personal property; actual manual taking is not necessary; and an unjustified assertion of title in the chattel may in and of itself constitute a conversion. (*Gruber* v. *Pacific States Sav. & Loan Co.* (1939) 13 Cal.2d 144, 148-149 [88 P.2d 137]; *Bufano* v. *City & County of San Francisco* (1965) 233 Cal.App.2d 61, 68 [43 Cal.Rptr. 223]; *Service* v. *Trombetta* (1963) 212 Cal.App.2d 313, 316 [28 Cal.Rptr. 68]; *Pilch* v. *Milikin* (1962) 200 Cal.App.2d 212, 224 [19 Cal.Rptr. 334].) ▮ Beverly Finance's assertion of legal ownership of the Cadillac as and from November 2, 1962, was in derogation of the rightful owner's title, which the Subrogee-Owner had acquired by paying Forest for its loss by theft.

▮ The fact that Beverly Finance acted in good faith, without notice, and without negligence constitutes no defense; conversion is an instance of strict liability in which care, good faith, and lack of knowledge will not save the defendant. (*Fresno Air Service* v. *Wood* (1965) 232 Cal.App.2d 801, 806

[43 Cal.Rptr. 276]; Accord: *Poggi* v. *Scott* (1914) 167 Cal. 372, 375 [139 P. 815]; *Bufano* v. *City & County of San Francisco, supra.*)

█ Section 3336 of the Civil Code provides in part: "The detriment caused by the wrongful conversion of personal property is presumed to be: First—The value of the property at the time of the conversion, with the interest from that time. . . ." In *Service* v. *Trombetta* (1963), *supra,* 212 Cal. App.2d 313, 316, it is stated that the measure of damages is the value of the property at the time and place of the conversion. The interest allowable by section 3336 in calculating damages for conversion has been held to be the legal rate of 7 percent. (*Daly* v. *Smith* (1963) 220 Cal.App.2d 592, 603 [33 Cal.Rptr. 920]; *Russell* v. *United Pac. Ins. Co.* (1963) 214 Cal.App.2d 78, 90 [29 Cal.Rptr. 346]; *Murphy* v. *Wilson* (1957) 153 Cal.App.2d 132, 136 [314 P.2d 507].) While the value of the Cadillac on November 2, 1962, as being $4,890 is controverted, there is evidence in the record to support the court's finding that the proper value was in this amount.

█ An appellate court is not concerned with the weight of the testimony on the issue of damages, but only whether there is substantial evidence to support the finding of the trial court. The burden is on the appellant to demonstrate that the amount of damages is erroneous. (*City of Salinas* v. *Souza & McCue Constr. Co.* (1967) 66 Cal.2d 217, 225 [57 Cal.Rptr. 337, 424 P.2d 921].) Where the evidence as to the amount of damages is conflicting, the question is for the trial court to determine. (*White* v. *Western Fish Co.* (1918) 37 Cal.App. 261, 262 [173 P. 934].)

The judgment insofar as it pertains to the conversion action brought by the Subrogee-Owner against Beverly Finance (No. 839225) therefore should be affirmed.

### *No Recovery on Bond Without Proof of Fraud*

█ The question presented by this portion of the appeal is whether a breach of warranty of title, without more, sufficiently meets the condition of "any fraud practiced" or any "fraudulent representation made" by an automobile dealer upon which liability on the bond furnished under sections 11710 and 11711 of the Vehicle Code is predicated. We hold that it does not.

Beverly Finance sought to recoup its loss by way of a recovery on the statutory bond, because the dealer had ceased doing business and had filed bankruptcy proceedings.

Section 11710 of the Vehicle Code in part relevant to this case provided: "(a) Before any dealer's license shall be issued or renewed by the department to any applicant therefor, the said applicant shall procure and file with the department a good and sufficient bond in the amount of five thousand dollars ($5,000) with corporate surety thereon, duly licensed to do business within the State of California, . . . approved as to form by the Attorney General, and conditioned that the said *applicant shall not practice any fraud,* [*or*] *make any fraudulent representation* which will cause a monetary loss to a . . . financing agency. . . ."(Italics added.)

Section 11711 of the same code in part relevant to this case stated: "(a) If any person shall suffer any loss or damage by reason of *any fraud practiced on him* or *fraudulent representation* made to him by a licensed dealer or one of such dealer's salesmen acting for the dealer . . .; provided, such person has possession of a written instrument furnished by the licensee, containing stipulated provisions and guarantees which the person believes have been violated by the licensee, . . . such person shall have a right of action against . . . the surety upon the dealer's bond, in an amount not to exceed the value of the vehicle purchased from . . . the dealer." (Italics added.)

Section 11722 of the same code provided in part relevant to this case: ". . . as to any conditional sales contract as defined in Section 2981 of the Civil Code, acquired by way of purchase or pledge, a financing agency shall be entitled to protection under said bond if such agency is *defrauded* by the licensee." (Italics added.)

The bond furnished by Surety expressly states that its liability in the "penal sum of Five Thousand and no/100 Dollars ($5,000)" is conditioned upon the principal, David Rosenbaum dba Tay Motors, practicing any fraud or making any fraudulent representation within the meaning of section 11711 of the Vehicle Code.

The parties do not dispute that the record is devoid of any evidence of fraud on "Tay Motors'" part as the term "fraud" is defined in sections 1571, 1572, and 1573 of the Civil Code.[2] Nor was any evidence adduced proving that Tay Motors had knowledge that the vehicle was stolen or that its identification number had been altered, a fact which two

---

[2]These sections define actual and constructive fraud as those terms are generally understood in the law of torts pertaining to fraud and deceit.

experienced DMV inspectors and the vice-president of Beverly Finance were unable to detect on their inspections.

Citing *Webster Thrift & Loan* v. *Hartford Acc. & Indem. Co.* (1960) 185 Cal.App.2d 696 [8 Cal.Rptr. 509], Beverly Finance claims that Tay Motors' representation that it had the full and complete title to the Cadillac, which turned out to be untrue, constitutes an adequate showing to qualify Beverly Finance as a beneficiary of the dealer's bond written by Surety. However, the bond in *Webster Thrift & Loan* was based upon a Los Angeles municipal ordinance which required used car dealers to put up bonds assuring losses or damages arising from a sale of a used car including the "failure to deliver a clear title to any person entitled thereto within 21 days after final payment has been made." Neither the statute nor the bond written in the instant case called for a bond assuring the failure of title, absent fraud or fraudulent representation.

■ There is nothing to indicate that the Legislature in using the terms "fraud" and "fraudulent representation" without further defining them in sections 11710 and 11711 of the Vehicle Code intended anything other than the general legal concept of those terms. (See 15 Assembly Interim Com. Report No. 24, Finance and Insurance (1959-1961) pp. 36-37 (Vol. 1, Appendix to Journal of Assembly, 1961 Reg. Sess.).)

"While interpretation of similar words in other statutes is not controlling, such interpretation is helpful in arriving at the legislative intent." (*Gleason* v. *City of Santa Monica* (1962) 207 Cal.App.2d 458, 461 [24 Cal.Rptr. 656].) It has also been stated "when a statute is but one in a series of like statutes and a particular phrase or expression appears in each of them those other statutes may be looked to as a guide to the proper construction or interpretation of the instant statute." (*Frediani* v. *Ota* (1963) 215 Cal.App.2d 127, 133 [29 Cal. Rptr. 912].)

In an attack upon the constitutionality of an act regulating subdivisions (Deering's Gen. Laws, 1937, Act 112, § 20 et seq.), it was urged that the failure of the Legislature to define "misrepresentation" and "fraud" rendered the act uncertain. Our state Supreme Court held that there was no ambiguity stating that "the terms 'fraud' and 'misrepresentation' are commonly understood and fully defined judicially." (*In re Sidebotham* (1938) 12 Cal.2d 434, 437-438 [85 P.2d 453, 122 A.L.R. 496], cert. denied 307 U.S. 634 [83 L.Ed. 1516, 59

S.Ct. 1031].) In *Wayne* v. *Bureau of Private Investigators & Adjusters* (1962) 201 Cal.App.2d 427, 438 [20 Cal.Rptr. 194], which dealt with the revocation of a private investigator's license, the term "fraud" as used in section 7553.2 of the Business and Professions Code was construed to be fraud as defined by cases dealing with fraud and deceit.

We hold that the words "fraud" and "fraudulent representation" in sections 11710 and 11711 of the Vehicle Code were intended by the Legislature to be used in the normal meaning of fraud as defined by sections 1571, 1572, and 1573 of the Civil Code and the cases construing those sections. ▮ Consequently, a misrepresentation of title without the necessary intent to deceive is inadequate. (Cf. *Goggin* v. *Reliance Ins. Co.* (1962) 200 Cal.App.2d 361, 365-366 [19 Cal. Rptr. 446].)

Finding XXII "That the provisions of said bond protect and are in favor of Beverly Finance" and conclusion 5 "That Beverly Finance Company is entitled to recover from American Casualty Company of Reading Pennsylvania damages in the amount of . . . ." are unsupported by the evidence and are therefore invalid.

The judgment declaring Surety to be liable to Beverly Finance on the statutory vehicle dealer's bond is erroneous in fact and in law.

*Disposition*

The judgment insofar as it pertains to action No. 839225 for conversion in favor of Bankers and Shippers Insurance Company, a corporation, and against Beverly Finance Company, a California corporation, is affirmed.

The judgment insofar as it pertains to action No. 828311 and declares that Beverly Finance Company, a California corporation, is entitled to recover from American Casualty Company of Reading, Pennsylvania, is reversed.

Bankers and Shippers Insurance Company (respondent in action No. 839225) and American Casualty Company of Reading, Pennsylvania (appellant in action No. 828311) shall recover their respective costs on appeal.

Kaus, P. J., and Reppy, J., concurred.