SWETS MOTOR SALES, INC., Appellant,

v.

M. R. PRUISNER, d/b/a Downtown Chrysler-Plymouth-Dodge, Downtown Chrysler-Plymouth, Inc., and Chrysler Credit Corporation, Appellee.

No. 2–57163.

Supreme Court of Iowa.

Dec. 17, 1975.

Engelbrecht, Ackerman & Boveia, Waverly, for appellant.

Zastrow, Noah & Smith, Charles City, for appellee Chrysler Credit Corp.

Heard by MOORE, C. J. and LeGRAND, REES, REYNOLDSON and McCORMICK, JJ.

REES, Justice.

Plaintiff Swets Motor Sales, Inc., appeals from an order of trial court sustaining motion for summary judgment of defendant Chrysler Credit Corporation and therein adjudicating the latter's interest in certain automobiles to be superior to the interest of plaintiff. We affirm in part, reverse in part, and remand for appropriate proceedings in conformity with this opinion.

Plaintiff Swets Motor Sales, Inc., (hereinafter Swets), an Illinois automobile "wholesaler," sold used cars and trucks to defendant Pruisner, a retail automobile dealer at Waverly. Pursuant to an oral arrangement, plaintiff delivered vehicles to defendant Pruisner with unencumbered certificates of title and was paid by Pruisner at the time of delivery of the cars. Chrysler Credit Corporation, joined as a defendant in this action, financed defendant Pruisner's inventory under a floor planning arrangement which the parties have stipulated was a valid security agreement with filed fi-

nancing statements covering new and used vehicles in Pruisner's possession.

From July 1973 until the end of September of the same year, Swets sold to Pruisner approximately 60 vehicles which were resold by Pruisner under the foregoing arrangement. In September 1973 four of Pruisner's checks written to plaintiff Swets, totalling approximately $31,000, were dishonored. Swets filed his petition at law and obtained a writ of attachment for the seizure of the vehicles then in Pruisner's possession, then amended his petition to an action sounding in equity, seeking a declaration that his interest in the automobiles was superior to that of Chrysler Credit Corporation. Chrysler Credit answered and counterclaimed against Swets, asserting therein that its interest in the vehicles was superior to that of plaintiff. It was stipulated that at the time of the issuance of the writ of attachment Chrysler Credit had in its possession the unencumbered titles to the vehicles in question.

Trial of the action commenced January 18, 1974, and on January 21, apparently after a substantial portion of the evidence had been presented, defendant Chrysler Credit moved for a summary judgment on the issue of priority of its security interest. Swets thereafter filed a resistance to such motion, alleging the existence of genuine issues of material fact regarding the possibility that, through fraud or mutual mistake, Swets' contract with Pruisner might be determined to be void. Swets also alleged the existence of genuine issues of material fact with respect to the proper valuation of the vehicles in question and Chrysler Credit's failure to minimize or mitigate damages.

On January 24 trial court sustained Chrysler Credit's motion for summary judgment and made various findings of fact and reached conclusions of law. In its findings of fact pertinent to this appeal was the trial court's determination the value of the attached vehicles was $9,300 at the date of the attachment and $5,100 on the date of the hearing. Trial court concluded as a matter of law that defendant Chrysler Credit Corporation had a right to assume defendant Pruisner's ownership of the vehicles in question from the latter's possession of unencumbered certificates of title. Trial court also concluded § 554.2403, The Code, 1973, precluded Swets from prevailing.

Accordingly, trial court decreed Chrysler Credit was entitled to possession of the vehicles under attachment and held valid title to them [with the exception of a certain Ford Torino automobile with which we are not concerned]. Trial court further found and adjudged the difference between the sum of $9,300 [which the court had determined to be the value of the vehicles at the time of attachment] and the subsequent sales price of the vehicles should be assessed against plaintiff Swets and paid out of its attachment bond.

Swets thereafter perfected a timely appeal by filing and serving notice on March 19, 1974. Defendant Chrysler Credit moved to dismiss the appeal since plaintiff did not apply for permission to appeal from what Chrysler Credit asserted was an interlocutory ruling. An order was entered by this court directing that the motion be submitted with the appeal.

Plaintiff states the following issues for review:

1. Is the appeal interlocutory, thereby requiring a grant of permission from this court under rule 332, Rules of Civil Procedure, in order for this court to assume jurisdiction?

2. Did trial court err in sustaining defendant's motion for summary judgment because there existed genuine issues of material fact with respect to:

(a) The existence of fraud by defendant Pruisner, d/b/a Downtown Chrysler-Plymouth-Dodge, or mutual mistake by the parties to the sales contract?

(b) The failure of defendant Chrysler Credit Corporation to minimize damages despite the opportunity to do so?

(c) The reasonable value of the vehicles attached?

I. We first consider whether we may review the order of the trial court sustaining the motion for summary judgment as a final order, without the necessity of permission from this court to take an interlocutory appeal.

■ Neither party to the appeal treats this question in its brief. We will nonetheless dismiss on our own initiative any appeal not authorized. We view the question as one of jurisdiction. *Harden v. Illinois Central R. Co.*, 254 Iowa 426, 429, 118 N.W.2d 76, 77–78.

■ When a ruling sustaining a motion for summary judgment is dispositive of the entire case, it is a final judgment for purposes of appeal. Rule 331(a), R.C.P.; *Flynn v. Lucas County Memorial Hospital*, 203 N.W.2d 613, 614 (Iowa 1973); 4 Am.Jur.2d Appeal and Error § 104, p. 621. An order overruling a motion for summary judgment is of course interlocutory. *Flynn, supra*; *Rosmann v. Lawler*, 257 Iowa 1292, 1295, 136 N.W.2d 513, 515.

■ In order to determine the question of the finality of the order, we must examine its scope and intent and the motion itself. *Flynn, supra*, 203 N.W.2d at 615.

We note initially that plaintiff's amended and substituted petition in equity prayed for relief against defendant Chrysler Credit only in the following respects:

(1) a prayer that the vehicles be returned to plaintiff;

(2) that an accounting be made for vehicles no longer in possession of defendant Pruisner, and additional sums be awarded for any sums due which the accounting might disclose;

(3) that a writ of attachment issue and levy on the vehicles;

(4) that the security interest of defendant Chrysler Credit be held to be junior and inferior to the interest of the plaintiff in the vehicles.

In its motion for summary judgment, Chrysler Credit prayed that the court "enter a judgment on the legal claims and positions of the parties plaintiff versus that of the Defendant * * *." In its order sustaining the motion for summary judgment, trial court held defendant Chrysler Credit was entitled to the possession and ownership of the vehicles under attachment, adjudicated their value on the date of attachment, made provisions for the protection of Swets in the sale of the vehicles, and ordered and decreed the difference between the value of the vehicles at the time of attachment and the sale price was to be paid from the proceeds of plaintiff's attachment bond. In its order and decree trial court disposed finally of every issue of litigation between Swets and defendant Chrysler Credit Corporation. We find nothing to indicate trial court intended or needed to do anything further to resolve the questions presented.

■ We are not inclined to the view that the fact defendant Chrysler Credit was but one of multiple defendants in the action should preclude our consideration of this appeal on grounds of nonfinality. *Reuter v. City of Oskaloosa*, 253 Iowa 768, 113 N.W.2d 716, involved an appeal from an order dismissing a negligence action as to one of two defendants. In *Reuter*, plaintiff's petition was pled in two divisions, in each of which negligence was asserted against both defendants. In that circumstance, we held the order dismissing the case as to one of two defendants was not a final order from which an appeal must be taken within 30 days without waiting for disposition of the case as to the other defendant. We there stated the general policy of the law is against piecemeal appeals and cited Am.Jur.2d and Corpus Juris Secondum for the proposition a judgment or decree is generally not final which settles the cause as to only one or more of several defendants.

In *McGuire v. City of Cedar Rapids*, 189 N.W.2d 592 (Iowa 1971), we made it clear

the principles enunciated in *Reuter* are not to be applied without exception to every instance in which an order disposes of the case as to only one of multiple defendants. In *McGuire* a wife in her individual capacity and as guardian and conservator of her husband filed her petition in four divisions against the city of Cedar Rapids and a contractor to recover for injuries sustained by her husband in an accident in a sewage disposal plant. We there held the wife could appeal as final an order by trial court dismissing her cause of action as against the city only, even though other issues and parties still remained in the litigation. The rationale behind our conclusions in *McGuire* was that the claimed basis of liability asserted against the city was not in any way "dependent on or intertwined with" the claimed basis of liability asserted against the contractor. 189 N.W.2d at 598. We there reasoned the order dismissing the action as against the city of Cedar Rapids was a final determination of the separable controversy between plaintiff and the city and did not affect the issues as between plaintiff and the other defendant in the litigation. For an interpretation of *McGuire*, see *Bennett v. Ida County*, 203 N.W.2d 228 (Iowa 1972).

The rule enunciated in *McGuire*, therefore, appears to justify our consideration of the instant appeal so long as the basis of liability and issues between Swets and defendant Chrysler Credit are separable and not dependent on or intertwined with those between plaintiff and defendant Pruisner, and so long as the determination of the motion for summary judgment did not affect the issues remaining between the other parties in the litigation.

We therefore treat as final, for purposes of this appeal, the order sustaining the motion for summary judgment. The only issues between plaintiff and defendant Chrysler Credit were which party's interest in the vehicles was superior and the matter of compensation for the loss of value of the vehicles which they were distrained under the writ of attachment. The record does not disclose any claim by any defendant other than Chrysler Credit of a colorable interest in the vehicles in question. At the time of the hearing Pruisner was not in possession of either the vehicles or the certificates of title, and could not deliver possession of either.

The ruling on the motion for summary judgment by the trial court could have no effect on the issues remaining between Swets and all defendants other than Chrysler Credit. Had it been true that some aspect of the contractual relationship between Swets and Pruisner could have affected the priority of defendant Chrysler Credit's interest in the vehicles, it might be said that the granting of the motion for summary judgment implicitly affected plaintiff's claim against Pruisner. However, as we point out in a subsequent division of this opinion, plaintiff's allegations of fraud or mutual mistake are not determinative of defendant Chrysler Credit's priority.

II. We next consider Swets' contention trial court erred in sustaining the motion of defendant Chrysler Credit for summary judgment.

A motion for summary judgment may be sustained only where the moving party demonstrates the absence of any genuine issue of material fact. Rule 237(c), R.C.P.; *Mead v. Lane*, 203 N.W.2d 305, 306–307 (Iowa 1972). Plaintiff contends defendant Chrysler Credit did not meet this burden and trial court accordingly erred in sustaining its motion.

Plaintiff asserts the existence of genuine issues of material fact with respect to the following matters:

(1) the existence of fraud or mutual mistake affecting the sales contract between plaintiff and defendant Pruisner;

(2) the failure of defendant Chrysler Credit Corporation to minimize or mitigate damages;

(3) the reasonable value of the vehicles in question at the time of attachment.

In *Daboll v. Hoden,* 222 N.W.2d 727, 731 (Iowa 1974), we made extensive observations on the principles governing a motion for summary judgment under rule 237, R.C.P.:

> "The purpose of the rule is to avoid useless trials. Where there is no genuine issue of fact to be decided, the party with a just cause should be able to obtain a judgment promptly and without the expense and delay of a trial. [citations]. 'In ruling on a motion for summary judgment, the court's function is to determine whether such a genuine issue exists, not to decide the merits of one which does.' [citation]."

As noted above, the burden is upon the moving party to show absence of any genuine issue of material fact. All material properly before the court must be viewed in the light most favorable to the opposing party. *Carter v. Jernigan,* 227 N.W.2d 131, 132 (Iowa 1975); *Daboll v. Hoden, supra.* So viewing Swets' first contention, we uphold trial court's determination there was no genuine issue of material fact, in that even assuming the existence of fraud or mutual mistake between Swets and Pruisner, defendant Chrysler Credit Corporation's interest in the vehicles would still be superior to that of Swets.

■ It was stipulated by the parties to this action that defendant Chrysler Credit Corporation had a valid outstanding security agreement with defendant Pruisner covering new and used vehicles in the latter's possession at all times pertinent to the action. Chapter 554 of the Uniform Commercial Code provides the resolution of the priority problem in this case. Section 554.-2403, The Code, 1973, provides in pertinent part:

> "1. A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase the purchaser has such power even though
>
> " *   *   *
>
> "b. the delivery was in exchange for a check which is later dishonored,
> *   *   *."

The above section of the Uniform Commercial Code indicates that despite the fact Pruisner tendered, for the purchase of the vehicles, a check which was subsequently dishonored, he could, nonetheless, transfer good title to a "good faith purchaser for value."

"Good faith" is defined in the Uniform Commercial Code as "honesty in fact in the conduct or transaction concerned." Section 554.1201(19), The Code. Plaintiff did not, and does not now, present any factual question as to the good faith of defendant Chrysler Credit, whose security interest under the floor planning scheme predated the execution and delivery to plaintiff of the dishonored checks.

A purchaser is defined by section 554.-1201(33), The Code, as "a person who takes by purchase." Section 554.1201(32), The Code, defines "purchase" as including "taking by sale, discount, negotiation, mortgage, pledge, lien, issue or reissue, gift or any other voluntary transaction creating an interest in property."

Section 554.1201(44)(b), The Code, provides that a person gives "value" for rights if he acquires them "as security for or in total or partial satisfaction of a pre-existing claim." From the above definitions it is abidingly clear that we must conclude defendant Chrysler Credit acted in good faith and "gave value." It is equally clear that a secured party under Article 9 of the Uniform Commercial Code (§ 554.9105(1)(i), The Code, 1973) is a "purchaser" within the meaning of § 554.1201(33) above. The central contention of Swets, however, is that if his contract with Pruisner were affected by fraud or mutual mistake, defendant Chrys-

ler Credit would not be a secured party with respect to the vehicles in question in this case.

In support of this contention Swets directs our attention to § 554.9204(1), The Code, 1973, which provides that a security interest cannot attach until there is agreement that it attach and value is given and the debtor has rights in the collateral. Swets argues that if the purchase by Pruisner was accomplished as a result of fraud or mutual mistake, Pruisner would have no "rights" in the collateral and, consequently, defendant Chrysler Corporation would be neither a secured party nor a purchaser. We find this contention to be without merit.

Particularly pertinent to our conclusion in this regard is our decision in *Herington Livestock Auction Company v. Verschoor*, 179 N.W.2d 491 (Iowa 1970). In *Herington* plaintiff had sold 84 head of cattle to a speculator, using an invoice which provided on its face: "The purchaser agrees that title of stock listed above shall be retained by us until check or draft in payment of same is paid." The speculator, in turn, delivered the cattle to defendant who, acting on the speculator's directions, sold them and tendered a check to the latter. Subsequently plaintiff was not paid for the cattle by the speculator, and brought an action against defendant for conversion. After a motion for judgment notwithstanding verdict had been resolved adversely to plaintiff, he appealed, claiming title to the cattle had not passed to the speculator, due to the reservation in the invoice.

We affirmed in *Herington*, holding that plaintiff seller could at most have reserved only a security interest in the cattle. Pertinent to our disposition of the appeal was Code section 554.2401(2) which provides in material part:

"Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest * *."

In the matter before us here plaintiff did not even reserve a security interest in the vehicles in question. At the time of the delivery of the vehicles, Pruisner acquired sufficient rights in the same to permit Chrysler Credit Corporation's security interest to attach.

An almost identical analysis was employed by the Supreme Court of Nebraska under identical Uniform Commercial Code provisions in *Jordan v. Butler*, 182 Neb. 626, 156 N.W.2d 778, a case involving the respective rights of a defrauded initial seller and a subsequent good faith purchaser for value.

We also note that when goods have been delivered under a transaction of purchase the purchaser has power to transfer good title to a subsequent good faith purchaser for value even though the original delivery was procured through fraud punishable as larcenous under the criminal law. Section 554.2403(1)(d), The Code, 1973.

We further observe § 554.2702(2), The Code, provides that on a credit sale to an insolvent buyer, the seller has ten days to make reclamation, unless the buyer has misrepresented in writing his solvency within three months prior, in which case the time limit does not apply. That section further provides: "Except as provided in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay." There is no indication by plaintiff here that he pursued this remedy against Pruisner. For the implication drawn by the Tenth Circuit Court of Appeals from a plaintiff's failure to comply with an identical statute in a case quite similar to the one at bar, see *United States v. Wyoming National Bank of Casper*, 505 F.2d 1064 (10 Cir. 1974).

■ III. Plaintiff Swets next contends a material issue of fact existed as to whether defendant Chrysler Credit took steps to

minimize or mitigate damages when it had an opportunity to do so.

There is testimony in the record to the effect that on October 23, 1973, employees of defendant Chrysler Credit Corporation took over the operation of Pruisner's business establishment immediately after being informed a payment it was expecting would not be made. The record also indicates Pruisner's attorney advised the officers of Chrysler Credit it would be necessary to liquidate the inventory and asked their assistance in effecting liquidation. Robert Fuller, branch manager of Chrysler Credit, testified that instead of closing the dealership and selling the vehicles at auction, they assisted in selling the cars through the dealership as a going business.

Attached to Swets' resistance to the motion for summary judgment was an affidavit signed by his counsel stating he had prepared a stipulation and forwarded it to Ralph Laird, attorney for Pruisner, Downtown Chrysler-Plymouth-Dodge and Downtown Chrysler-Plymouth, Inc. The stipulation dated October 31, 1973, embraced an offer by plaintiff to release his attachment and sell the vehicles at public auction in Mason City the same day. The stipulation was signed by plaintiff's counsel, but was not signed by either Pruisner's attorney or the attorney representing Chrysler Credit. The fact that the stipulation regarding the sale of vehicles at public auction was never presented to Chrysler is established by a joint affidavit of counsel for Pruisner and Chrysler Credit appearing in the record before us.

Plaintiff's affidavit raised no genuine issue of material fact. At most, it indicates the offer to release the attachment and sell the vehicles at auction was presented only to Pruisner's attorney. There is no claim the offer ever reached Chrysler Credit Corporation or its attorney. Chrysler Credit cannot be charged with a duty to agree to an offer that was never presented to it. Trial court was correct in concluding no fact issue was raised in this regard.

IV. Finally, plaintiff contends trial court erred in sustaining Chrysler Credit's motion for summary judgment for the reason that a genuine issue of material fact existed as to the value of the vehicles on the date of attachment. In ruling on the motion, the court fixed the value of the vehicles on said date at $9,300.

The only evidence before the court supporting such valuation was the testimony of Fuller, branch manager for Chrysler Credit. Fuller stated his opinion, based upon loan values, that the $9,300 figure was a correct assessment of the aggregate value of the vehicles in question.

Plaintiff attached to his resistance to the motion for summary judgment his own affidavit wherein he deposed and stated he was engaged in the wholesale and retail sale of motor vehicles and had himself examined the vehicles in question and determined their aggregate value to be $8,400. It would appear this opinion was directed at the valuation of the vehicles at the date of the hearing and not at the date of attachment.

Viewing all of the evidence in the light most favorable to the plaintiff and acknowledging that the burden here was on defendant, we conclude there is merit in plaintiff's contention trial court erred in setting the valuation of the vehicles at $9,300 as a matter of law.

In *Sherwood v. Nissen*, 179 N.W.2d 336, 339 (Iowa 1970), we said "Some ultimate facts lend themselves more readily to categorical proof than others." In *Sherwood*, we held, inter alia, a movant for summary judgment did not meet his burden of establishing the reasonable value of services. In the instant case, the unliquidated value of the automobiles, like the reasonable value of services rendered, is not ordinarily a matter lending itself to unequivocal or categorical proof sufficient to support a ruling of the trial court here as a matter of law.

We find, and accordingly hold, defendant Chrysler Credit Corporation did not meet

its burden to show the absence of a genuine issue of material fact regarding the value of the vehicles at the date of the attachment. Trial court accordingly erred in fixing the value at $9,300 as a matter of law.

In summary, we conclude and hold:

(1) Trial court was correct in sustaining motion for summary judgment of defendant Chrysler Credit Corporation insofar as it sought an adjudication that its interest in the automobiles in question was senior and superior to plaintiff's claim of ownership thereto.

(2) Trial court erred in failing to find there was a genuine issue of material fact regarding the value of the automobiles at time of attachment of same, and accordingly erred in fixing the value of the cars at $9,300.

We therefore affirm trial court in its findings, conclusions and decree adjudicating the rights of plaintiff Swets in the automobiles in question to be junior and inferior to the claim of ownership of defendant Chrysler Credit Corporation. We reverse the judgment of trial court relative to the value of the vehicles and remand for further hearing and determination of the value of the same. See rule 237(d) and rule 342(e), R.C.P. See also *Bauer v. Stern Finance Co.*, 169 N.W.2d 850 (Iowa 1969) and *Heins v. City of Cedar Rapids*, 231 N.W.2d 16 (Iowa 1975).

Affirmed in part, reversed in part and remanded for further proceedings.