**TOWE FARMS, INC. and Edward Towe, Plaintiffs,**

v.

**CENTRAL IOWA PRODUCTION CREDIT ASSOCIATION, Belle Plaines Livestock Company and William E. Irvine, Defendants.**

**Civ. No. 80–96–B.**

United States District Court, S. D. Iowa, C. D.

Dec. 10, 1981.

Thomas E. Towe, Towe, Ball, Enright & Mackey, Billings, Mont., Donald H. Zarley, Zarley, McKee, Thomte, Voorhees & Sease, Des Moines, Iowa, for plaintiffs.

A. Frederic Matthias, Matthias, Tyler, Levin & Nuzum, Newton, Iowa, Anders J. Norgaard, Belle Plaine, Iowa, Robert J.

Dieter, Redfern, McKinley, Mason & Dieter, Cedar Falls, Iowa, for defendants.

## RULING ON MOTION FOR PARTIAL SUMMARY JUDGMENT AND JUDGMENT OF LIABILITY

VIETOR, District Judge.

This action arises out of the repossession and sale by defendants Central Iowa Production Credit Association (CIPCA) and Belle Plaines Livestock Auction, Inc. (BPLA) of cattle on the farm of William Irvine believed by them to secure a note held by CIPCA on which Mr. Irvine was in default.[1] Plaintiffs allege that a number of the cattle repossessed and sold were leased to Mr. Irvine by them and that the defendants' action with regard to those cattle amounted to conversion for which plaintiffs are entitled to damages. Plaintiffs further allege that defendant CIPCA wrongfully and improperly interfered with plaintiffs' contract with William Irvine.

## MOTION BEFORE THE COURT

The court has before it plaintiffs' motion for partial summary judgment, defendants' resistance, plaintiffs' reply, and defendants' response thereto.

Fed.R.Civ.P. 56(c) provides in part: "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

## UNDISPUTED FACTS

The following facts are undisputed.

William Irvine, a farmer in Tama County, Iowa, has been financed by CIPCA since 1962. CIPCA has at all times had financial statements on record and a valid security interest in all of the Irvine livestock and all proceeds and property owned or to be acquired by him and his wife.

In July 1974 plaintiffs placed cattle with William Irvine in anticipation of a lease ultimately entered into on November 19, 1975. Under the terms of the lease, plaintiff furnished Mr. Irvine with 70 registered Hereford cows which Mr. Irvine agreed to properly maintain, feed, and care for, including annual insemination of the cows to registered Hereford horned bulls. The yearly heifers were to be tattooed promptly after birth and monthly reports were to be made to plaintiffs, who were entitled to their choice of one out of every four of the yearly heifer calves. Mr. Irvine was to maintain, feed, and care for the heifers until they were 18 months old, at which time plaintiffs had the option of removing their heifers or leaving them with Mr. Irvine's herd. If left in the herd, Mr. Irvine would be entitled to all of the calves born of those cows where Mr. Irvine furnished the bull or bulls to produce such calves. Under the lease, defective cows were to be culled out and hauled to market by Mr. Irvine with the proceeds from such sales belonging to plaintiffs. Mr. Irvine further agreed to replace any cow or heifer belonging to plaintiff that died, was stolen, lost, or unaccounted for with a heifer from Mr. Irvine's share of calves born the following year.

The lease was to run for five years and thereafter on a year-to-year basis subject to cancellation by either party by serving notice 150 days prior to the termination of any succeeding year.

No security agreement was entered into by the parties to the lease.

On December 19, 1978, CIPCA, feeling insecure in its position in financing the Irvine farming operation, requested that the Irvines assemble the collateral at their resi-

---

1. Plaintiffs originally brought this action against Central Iowa Production Credit Association (CIPCA), Belle Plaines Livestock Auction, Inc. (BPLA), and William Irvine. The court has been informed, however, by William Irvine's counsel, that the plaintiffs and Mr. Irvine have reached settlement and that a stipulation of dismissal between plaintiffs and Mr. Irvine will be filed in the near future. The court, accordingly, does not address plaintiffs' motion for partial summary judgment as it relates to William Irvine and plaintiffs' motion to strike the affidavit of William Irvine filed in support of his resistance to that motion.

dence by December 27, 1978, at 10:30 a. m. for CIPCA to take possession. CIPCA took possession of the cattle on that date and the cattle were sold by BPLA the following day. The Irvines were not present at the time of repossession. The proceeds of the sale were applied by CIPCA to the balance due on the Irvine note. Plaintiffs received no part of the proceeds from the sale.

Plaintiffs assert that under these facts, they are entitled as a matter of law to judgment, in an amount to be later determined at trial of this action.

## LAW TO BE APPLIED

■ Jurisdiction in this case is predicated upon the citizenship diversity of the parties. Accordingly, the law of the forum state, including its choice of law, shall be applied. *Erie R.R. v. Thompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). There appears no dispute that Iowa law governs the substantive issues raised in the motion.

## UNIFORM COMMERCIAL CODE

Defendants assert that plaintiffs' interest in the cattle was a security interest arising under Iowa Code §§ 554.2403 & 554.9113 (1981), for which a written and filed security agreement was required to protect plaintiffs' interest, and that the lack of a written and filed security agreement permitted Mr. Irvine to transfer all of the rights of plaintiffs in the ordinary course of business, and that he made such a transfer to CIPCA. Defendants further assert that plaintiffs should have exercised options available to them under Iowa Code § 554.9112 (1981), upon learning of CIPCA's repossession.

### *"Security Interest"*

Section 554.9113, upon which defendants rely, provides:

A security interest arising solely under the Article on Sales (Article 2) is subject to the provisions of this Article except that to the extent that and so long as the debtor does not have or does not lawfully obtain possession of the goods

(a) no security agreement is necessary to make the security interest enforceable; and

(b) no filing is required to perfect the security interest; and

(c) the rights of the secured party on default by the debtor are governed by the Article on Sales (Article 2).

This section applies only to "security interests," and then only if the "security interest" arises solely under the sales article. *See* Official Code Comment, § 9–113, Uniform Commercial Code (1962).

A "security interest" is defined as

an interest in personal property or fixtures which secures payment or performance of an obligation. * * * Unless a lease or consignment is intended as security, reservation of title thereunder is not a "security interest" but a consignment is in any event subject to the provisions on consignment sales (section 554.2326). Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.

Iowa Code § 554.1201(37) (1981).

■ The lease in this case contains no option to purchase nor does it contain an option to become an owner for a nominal consideration. Indeed, under the terms of the lease, Mr. Irvine was to replace any of the original cows or plaintiffs' subsequently born heifers that died, were stolen, lost or unaccounted for during the term of the lease. The absence of such language, however, is not controlling and economic realities may indicate that a "lease" is in fact a security agreement. *See Matter of Fashion Optical, Ltd.*, 653 F.2d 1385, 1389 (10th Cir. 1981). Such is not the case here. It is clear from the face of the lease and the parties' treatment of it that plaintiffs intended to retain title in and protect their original

investment. There is nothing in the record before the court to indicate that the lease was intended as a security agreement, and defendants appear to concede that it is not.

The conclusion that the lease is not a security agreement is buttressed by the legislative history of Iowa Code § 554.1201(37) (1981). As originally defined, "security interest" included "any interest of an owner of farm products whose possession is entrusted to a person engaged in farming operations." Iowa Code § 554.1201(37) (1967). As noted in the Iowa Code Comments to the section, this language was not in the Uniform Commercial Code, and was considered one of the more important Iowa changes in the Code. It was directed to the practice of placing feeder cattle with a farmer under a feeder contract. Iowa Code Comments § 554.1201(37), I.C.A. (1967). The Iowa Code Comments further state:

> The Iowa Study Committee concluded that it was not reasonable to protect a security interest in farm products and not protect an ownership interest in the same farm products. Therefore, the definition of "security interest" is broadened to include the interest of an owner of farm products (such as livestock) who entrusts possession to a person engaged in farming operations. Article 9 applies to this new kind of "security interest" in its entirety, including the obligation to perfect the security interest. In the feeder contract situation, the owner of the feeder cattle will ordinarily file a financing statement under Article 9 to perfect his "security interest" and prevent the farmer from selling free of the owner's interest to a buyer in ordinary course.

*Id.* However, this language, which may have covered a lease such as the one in this case, was deleted from the Iowa Code in 1974, before the lease in this case was executed. Acts 1974 (65 GA) Ch. 1249, § 1, 12.

As the lease in this case is a true lease, it is not a "security interest" and article 9 does not apply.[2]

2. Defendants' reliance on *Lisbon Bank & Trust Co. v. Murray*, 206 N.W.2d 96 (Iowa 1977), and *Hedrick Savings Bank v. Myers*, 229 N.W.2d

*Section 554.2403*

Similarly, Iowa Code § 554.2403 (1981) fails to provide a defense for defendants' actions in this case. That section provides:

1. A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction or purchase the purchaser has such power even though

a. the transferor was deceived as to the identity of the purchaser, or

b. the delivery was in exchange for a check which is later dishonored, or

c. it was agreed that the transaction was to be a "cash sale", or

d. the delivery was procured through fraud punishable as larcenous under the criminal law.

2. Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.

3. "Entrusting" includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law.

4. The rights of other purchasers of goods and of lien creditors are governed by the Articles on Secured Transactions (Article 9), Bulk Transfers (Article 6) and Documents of Title (Article 7).

Section 554.2403(1) addresses the title a purchaser can obtain from a transferor. Clearly, a secured party can be a

252 (Iowa 1975), is misplaced because those cases did involve security interests.

purchaser. *Swets Motor Sales, Inc. v. Pruisner*, 236 N.W.2d 299, 304 (Iowa 1975); Iowa Code § 554.1201(33) (1981). However, while a conditional sale disguised as a lease may constitute a transaction of purchase for the purposes of section 554.2403(1), a true lease is not a transaction of purchase and does not confer even voidable title upon the lessee. *American Standard Credit v. National Cement Co.*, 643 F.2d 248, 269 (5th Cir. 1981). *See McDonald's Chevrolet, Inc. v. Johnson*, 376 N.E.2d 106, 109 (Ind.App. 1978). As Mr. Irvine did not have even voidable title in the leased cattle, CIPCA could obtain no title from him. For this reason, *Swets Motor Sales, Inc. v. Pruisner*, *supra*, cited by defendants, is inapposite.

 Furthermore, defendants do not fall within the provisions of section 554.-2403(3) and (4). An entruster has no recourse against a buyer in the ordinary course of business who buys from a merchant who deals in goods of the kind repossessed. However, assuming but not deciding that Mr. Irvine was a merchant who dealt in goods of the kind repossessed, defendants were not buyers in the ordinary course of business.

A "buyer in the ordinary course of business" is defined as

a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker. * * * "Buying" may be for cash or by exchange of other property or on secured or unsecured credit and includes receiving goods or documents of title under a pre-existing contract for sale but does not include a transfer in bulk or as security for or in total or partial satisfaction of a money debt.

Iowa Code § 554.1201(9) (1981).

Irrespective of the good faith and knowledge elements which are a matter of dispute between the parties, defendants did not "buy" the cattle. Rather, the cattle were taken to satisfy a pre-existing money debt owed by Mr. Irvine. As defendants are not buyers in the ordinary course of business, they could not have obtained the rights of plaintiffs in their cattle.

### *Section 554.9112*

 Finally, defendants assert that plaintiffs have not utilized remedies available to them under Iowa Code § 554.9112 (1981), which provides:

Unless otherwise agreed, when a secured party knows that collateral is owned by a person who is not the debtor, the owner of the collateral is entitled to receive from the secured party any surplus under Section 554.9502 subsection (2) or under Section 554.9504 subsection (1), and is not liable for the debt or for any deficiency after resale, and he has the same right as the debtor

(a) to receive statements under Section 554.9208;

(b) to receive notice of and to object to a secured party's proposal to retain the collateral in satisfaction of the indebtedness under Section 554.9505;

(c) to redeem the collateral under Section 554.9506;

(d) to obtain injunctive or other relief under Section 554.9507 subsection (1); and

(e) to recover losses caused to him under Section 554.9208 subsection (2).

This section, however, is applicable only where the owner of property, though not the debtor, pledges his property to secure the indebtedness of another. *Clearfield State Bank v. Contos*, 562 P.2d 622, 264 (Utah 1977). It does not apply where, as in this case, the debtor pledges another's property without authority to do so. *Id.* As the code comments make clear, the section

does not purport to cut across the law of conversion or of ultra vires. Whether a person who does not own property has authority to encumber it for his own debts and whether a person is free to encumber his property as collateral for the debts of another, are matters to be decided under other rules of law and are not covered by this Section.

Official Code Comments § 9–112, Uniform Commercial Code (1962).

## CONVERSION

Concluding that the Uniform Commercial Code fails to provide the defendants with an affirmative defense does not, however, resolve this action. Plaintiffs must still demonstrate that they are entitled to judgment as a matter of law.

■ Plaintiffs allege that the defendants converted their cattle. "A conversion is properly defined as a distinct act of dominion wrongfully asserted over another's personal property in denial of or in derogation, exclusion or defiance of such title or rights." *Jensma v. Allen*, 248 Iowa 556, 562, 81 N.W.2d 476, 480 (1957). *See Welke v. City of Davenport*, 309 N.W.2d 450, 451 (Iowa 1981); *Sandhorst v. Mauk's Transfer, Inc.*, 252 N.W.2d 393, 398 (Iowa 1977). Although the tort includes an intent element, it is an intent to exercise dominion or control. The converter's good faith, ignorance of the owner's true rights, mistake, or the owner's negligence are irrelevant. *See Chemical Bank v. Miller Yacht Sales*, 173 N.J.Super. 90, 99–100, 413 A.2d 619, 623 (1980); *Universal C.I.T. Credit Corp. v. Weeks*, 46 Ala.App. 372, 376, 242 So.2d 682, 685 (1970); *Beverly Finance Co. v. American Cas. Co.*, 273 Cal.App.2d 259, 264, 78 Cal.Rptr. 334, 337 (1969); *Newhart v. Pierce*, 254 Cal.App.2d 783, 793, 62 Cal.Rptr. 553, 560–61 (1967).

■ In the instant case, defendant CIPCA took a number of cattle belonging to plaintiffs which were subsequently sold by defendant BPLA, who turned the proceeds of the sale over to CIPCA. The taking and sale were acts of dominion wrongfully asserted over the plaintiffs' property in derogation of plaintiffs' rights thereto. Although this court could find no Iowa case discussing an auctioneer's liability for conversion and defendant BPLA does not raise the issue, I believe the Iowa Supreme Court, were it to address the issue, would hold that an auctioneer is liable for conversion to the true owner of property sold for a third party absent a waiver or release or a

showing of acquiescence or consent to the sale by the true owner. As observed in Annotation, "Personal Liability of Auctioneer to Owner or Mortgagee for Conversion," 96 A.L.R.2d 208, 210 (1964):

> The great weight of authority follows the rule that a sale by an auctioneer for a principal who has no title to the property or who holds it subject to a mortgage or other lien, or who for other reasons has no right to dispose of it, entails liability to the true owner, lienor, or conditional vendor, as for a conversion, on the part of the auctioneer who sells it under such circumstances, pays over the proceeds to the principal, and hands the property over to the purchaser with a view to passing the title to him, notwithstanding the auctioneer acts without knowledge of the principal's lack of authority to sell. In other words, in the jurisdictions following the majority rule the good faith of the auctioneer and his lack of knowledge is not a defense to the action. * * * The courts have either directly, or by necessary implication, stated that the reason for this rule is that although it falls hardly [sic] upon innocent and honorable persons, in view of general considerations of legal policy a more salutary regulation than that of requiring the auctioneer to look well to the title of goods which he sells cannot be conceived of.

*See generally id.* (and cases cited therein). The rule is sound.

Defendants assert, however, that when one places livestock in possession of another who has pledged after-acquired property on a security agreement, of which he has legal notice by the recording of a financing statement, he has a duty to communicate his interest in the livestock to the lending institution. Defendants assert that because plaintiffs failed to notify CIPCA that they were placing cattle on the Irvine farm they are now estopped to allege conversion by CIPCA.

■ While a duty to notify creditors is imposed where goods are consigned for sale, Iowa Code § 554.2326 (1981), defend-

ants cite no authority, nor is this court aware of any, for imposing such a duty upon a lessor. The notice defendants seek was originally provided by the Uniform Commercial Code as it was adopted in Iowa. The expansion of "security interest" to include leases such as the one at issue in this case and the corresponding filing requirements would have afforded defendants some degree of notice of plaintiffs' interest. As already discussed, however, that provision was deleted in 1974. While the problem presented by this case is not adequately dealt with by the Uniform Commercial Code, nevertheless, I can find no support for the duty sought to be imposed on lessors by the defendants. As no duty exists, plaintiffs cannot be estopped for failing to fulfill it.

Plaintiffs' motion for partial summary judgment on Count II of their complaint is granted.[3]

## TORTIOUS INTERFERENCE

Plaintiffs further allege that defendant CIPCA's conduct in repossessing the cattle amounted to tortious interference with a contract.

█ To succeed under this theory, plaintiff must establish:

(1) the existence of a valid contractual relationship;

(2) knowledge of the relationship on the part of the interferer;

(3) intentional interference inducing or causing a breach or termination of the relationship; and

(4) resultant damage to the party whose relationship has been disrupted.

*Stoller Fisheries, Inc. v. American Title Ins. Co.,* 258 N.W.2d 336, 340 (Iowa 1977).

█ In this case, a factual dispute exists both as to the defendants' knowledge of the contract and their intent, if any, to inter-

fere or induce a breach of that contract. Summary judgment is therefore inappropriate on this issue.

## JUDGMENT

Plaintiffs' motion for partial summary judgment is granted as to Count II of plaintiffs' complaint and it is adjudged that defendants are liable to plaintiffs for conversion of their cattle in some amount to be determined at trial of this action.

In all other respects, plaintiffs' motion is denied.

---

**3.** Generally, a claimant for conversion must establish the identity of the property claimed. *Ontario Livestock Comm'n Co. v. Flynn,* 256 Iowa 116, 125, 126 N.W.2d 362, 367 (1964). In this action, a factual dispute exists as to the number and ownership of the cattle actually converted. There is no dispute that some of the cattle repossessed and sold by defendants belonged to plaintiffs. Under these circumstances, the number of cattle and their value are questions of damages.